516 So.2d 499 (1987)
Cecile McNALLY
v.
Leo F. McNALLY, Jr.
No. 56771.
Supreme Court of Mississippi.
December 9, 1987.
Joseph R. Meadows, Graves, Riley & Meadows, Gulfport, for appellant.
James N. Randall, Jr., Gulfport, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the court:
Today's case presents a question arising with increasing frequency: one spouse in a new marriage attends professional or graduate school while the other earns the couple's keep. After graduation but before the marriage begins to reap the economic benefits of this professional training, the parties get divorced.
On occasion at the time of the divorce the professionally trained spouse is sufficiently impecunious that no alimony should be *500 awarded. In such cases, we direct that the Chancery Court generally should retain jurisdiction of the alimony feature of the case and pursuant thereto entertain subsequent application for award of alimony.

II.

A.
Leo F. McNally, Jr., and Cecile McNally were married on May 29, 1976, in Gulfport, Mississippi. Of this marriage there has been born one child, Jamie McNally, a female, born on February 11, 1982. The McNallys permanently separated in June of 1984. Cecile McNally is the Appellant here, while Leo is the Appellee.
At the time the McNallys married, Leo had completed his bachelor's degree at the University of Southern Mississippi, and Cecile had received her associate's degree in nursing from Jefferson Davis Junior College and was employed as a nurse. Leo enlisted in the military, as the couple had planned, and soon after their wedding, the McNallys moved to Oklahoma for Leo to begin his military service. From Oklahoma they were transferred to Texas, where they remained until Leo was discharged in 1979. The couple then moved to Memphis, where Leo hoped to enroll in dental school. When Leo was unable to gain admission to the dental school, the McNallys moved to Oxford, Mississippi, and Leo took courses at the University of Mississippi in an effort to raise his grade point average. He was successful, and in 1980, the couple relocated to Jackson and purchased a home. Leo then began his studies at the University of Mississippi Dental School.
In 1981, Cecile unexpectedly became pregnant. The McNallys had not planned to have children immediately. During the early months of her pregnancy, Cecile developed complications and was hospitalized. On the day she was admitted to the hospital, Leo visited her and told her that he was going hunting. When she explained the seriousness of her condition, he stated that he was under a lot of pressure and had not been hunting in some time. Cecile was in the hospital for three days, and Leo did not return from his hunting trip until the day after she was discharged.
In that same year, Leo became involved in an adulterous relationship. There appears in the record correspondence from his partner which indicates that this relationship continued during Cecile's pregnancy. Shortly after Cecile was discharged from the hospital, Leo expressed to her his concern about their finances and the added expense of having a baby. He suggested an abortion. Cecile was not receptive to this suggestion, and within a few weeks of this conversation, Leo moved out. Cecile received no financial support from Leo during the time that he was gone. Leo subsequently returned home, although the record does not indicate the precise date. The couple obtained marital counseling, during which Cecile forgave Leo's adultery. On February 11, 1982, Jamie was born.
After graduating from dental school, Leo obtained employment on the Mississippi Gulf Coast. In anticipation of their move to Gulfport, Cecile resigned from her $1,500.00 per month job in Jackson and accepted employment in Gulfport at $1,000.00 per month. A few weeks after Cecile had submitted her resignation, Leo told her he wanted a divorce. Because the position from which she had resigned had already been filled, Cecile found it necessary to move to Gulfport and accept the lower paying job which she had been offered there.

B.
On July 30, 1984, Leo F. McNally, Jr., commenced the present proceeding by filing his complaint in the Chancery Court of the First Judicial District of Harrison County, Mississippi. In this complaint Leo, acting individually, sought a divorce on the ground of irreconcilable differences. Cecile filed an answer and counterclaimed for divorce on the ground of habitual cruel and inhuman treatment. In her complaint she asked for custody of the child, child support and alimony. Leo then filed an amended complaint alleging habitual cruel and inhuman treatment, and subsequently *501 he filed yet another complaint in which he requested alimony and certain other relief.
On September 24, 1984, the Chancery Court entered a temporary judgment placing custody of the minor child, Jamie, with Cecile and ordering that Leo pay $200.00 per month in child support. The temporary judgment also ordered that Leo pay $500.00 per month by way of temporary alimony.
After a hearing on the merits, the Chancery Court on May 9, 1985, entered final judgment granting Cecile a divorce on the ground of habitual cruel and inhuman treatment. Cecile was given custody of Jamie, and Leo was ordered to pay $300.00 per month child support. He was also given reasonable visitation.
In addition, Leo was ordered to maintain medical and hospitalization insurance on the child; to pay half of all medical, orthodontic, dental and eye care expenses for the child which were not covered by the insured; and to assume all outstanding debts incurred during the marriage and prior to the date of separation, except for the note on the couple's 1984 Toyota Tercel. Cecile was given the use, possession and control of that automobile and ordered to make the monthly payments on it. The judgment contains no order regarding the house which the couple owned, but there is some indication in the record that the house was taken by foreclosure. Significantly, the judgment denied Cecile's request for either periodic or lump sum alimony.
Cecile brings this appeal, arguing that the financial aspects of the judgment for divorce are wholly inadequate.

III.
Cecile's principal complaint on appeal is the Chancery Court's failure to award periodic alimony. On this point the Court below stated:
The Court is of the opinion that to award alimony, either lump sum or continuing, to Mrs. McNally in addition to child support and the responsibility for the debts of the marriage would be unduly burdensome on Mr. McNally. Therefore, the prayer for alimony, both lump sum and continuing, must be denied.
Incident to a judgment for divorce, a chancery court has authority to award alimony after considering, weighing and balancing familiar factors: (1) the health and earning capacity of the husband, (2) the health and earning capacity of the wife, (3) the entire sources of income of both parties, (4) the reasonable needs of the wife, (5) the reasonable needs of the child, (6) the necessary living expenses of the husband, (7) the estimated amount of income taxes the respective parties must pay on their incomes, (8) the fact that the wife has free use of the home, furnishing and automobile, and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence. Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955).
The Chancery Court's decision on alimony will not be disturbed on appeal unless it be found against the overwhelming weight of the evidence or manifestly in error. Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion. Martin v. Martin, 271 So.2d 391 (Miss. 1972).
The record in the case at bar indicates that Cecile's total income during the eight year period of the marriage was between $135,000.00 and $140,000.00. Because Leo was in dental school from 1980 until 1984, his total income during the marriage was approximately $65,000.00.
At the time of trial neither party was earning a monthly income adequate to pay his or her expenses. Leo's monthly net income was approximately $1,050.00, and his monthly expenses appeared to total more than $2,000.00, leaving a net short fall of approximately $1,000.00 per month. Cecile's monthly net income was approximately $900.00. Her monthly expenses, less the $300.00 which she was awarded for child support, were approximately *502 $1,100.00, leaving a net short fall of approximately $200.00 per month. Neither party's financial position is enviable.
At the time of trial, May, 1985, Leo quite apparently was unable to pay alimony, although his inability to pay alimony appears to be exceeded only by Cecile's need for alimony. Cecile does not have the use and possession of their home. A $500.00 reduction in her gross monthly income resulted when she resigned from her job in order to accompany her husband as he began his new career, only to be told that he did not desire for their marriage to continue.
Cecile argues on appeal that equity would require that at least a nominal amount of alimony be awarded in order to allow for modification in the event that Leo's earning power increases, as it is likely to do.
In McIntosh v. McIntosh, 378 So.2d 629 (Miss. 1979), this Court reversed the Chancery Court's denial of alimony where the wife had quit school in order to work so that the husband could finish law school. Although the wife had a net income of $517.56 per month, this Court awarded her $10,000.00 lump sum alimony. Leo's financial circumstances, however, are such that no such appellate intervention would be justified here.
We have in the past implied that a divorce judgment may not be modified, post-divorce, to include alimony where alimony was not a part of the original judgment, Taylor v. Taylor, 478 So.2d 310, 312 (Miss. 1985); Savell v. Savell, 290 So.2d 621, 624 (Miss. 1974), although we have never expressly so held. Within our judicial and actual knowledge, many chancery courts have in circumstances such as today's developed the practice of awarding nominal alimony. This keeps the door open for a future motion to modify to increase alimony should the professionally trained spouse's income increase significantly as his or her practice develops. Other jurisdictions engage in this subterfuge. Sands v. Sands, 188 Conn. 98, 448 A.2d 822, 826 n. 5 (1982); Rose v. Rose, 340 S.E.2d 176, 180 (W. Va. 1985); Owens v. Owens, 435 So.2d 1316, 1319 (Ala. Civ. App. 1983).
The nominal alimony ruse strikes us as a less than candid means to an end that ought and may be achieved more sensibly. In cases of the sort before us today, where the facts do not justify a present award of alimony, the chancery court generally ought retain jurisdiction over the question of alimony. Such should have been done here. If at a later date Leo's dental practice becomes successful financially, Cecile would have the prerogative of making that fact known upon proper application, and the court would have authority to award such alimony as may at that time be fair and equitable under the criteria listed above.
Florida appears to have adopted such a course in Moore v. Moore, 401 So.2d 841, 842 (Fla.App. 1981). In Moore, the Court interpreted an award of alimony of $1.00 per year as a reservation of jurisdiction over the issue.
In the future we urge that the trial courts expressly state their reservation of jurisdiction in these cases without resort to "nominal" alimony awards.
401 So.2d at 842. See also O'Neal v. O'Neal, 407 So.2d 1011 (Fla.App. 1981).
Retention of jurisdiction is hardly a novel idea in domestic relations litigation. Once subject to in personam jurisdiction, parties remain so for future modification and enforcement proceedings. Covington v. Covington, 459 So.2d 780, 782 (Miss. 1984). Child custody and support judgments are subject to being reopened upon a showing of a material change in circumstance. Alimony judgments are as well subject to change. Campbell v. Campbell, 357 So.2d 129, 130, 132 (Miss. 1978); Lee v. Lee, 182 Miss. 684, 689, 181 So. 912 (1938).
In Gatlin v. Gatlin, 248 Miss. 868, 871, 161 So.2d 782, 783 (1964), the lower court awarded the wife alimony of $200.00 a month for eighteen months. On appeal, this Court ordered that the Chancery Court retain jurisdiction of the question of alimony.
We return to the facts of this case. Leo has achieved his professional degree and has begun to practice dentistry. Common *503 sense suggests that he has the capacity to increase his income significantly over time. The record indicates that Cecile's total income over the years of the marriage was approximately twice as much as Leo's. While Leo was in dental school, Cecile was the primary breadwinner, although Leo did borrow approximately $15,000.00 in guaranteed student loans, which the judgment requires him to repay. The record also indicates that Leo's brother lived with the McNallys for approximately five years during their marriage. He contributed approximately $175.00 per month to the household, in return for room and board. In addition to preparing his meals, Cecile also did the brother's laundry during this five year period.
We find no error in the Chancery Court's denial of alimony. In light of all of these factors, and particularly in view of Cecile's contributions to the household while Leo was studying dentistry, we hold that the Chancery Court should have expressly retained jurisdiction of the question of alimony and provided that its denial of alimony be without prejudice to Cecile's right to represent the question at a later date.

IV.
We consider separately Cecile's complaint that the Chancery Court erred in refusing to award her lump sum alimony. Here again, the Court enjoys a broad discretion. Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). Having in mind Leo's financial circumstances, we cannot  despite Cecile's needs  find basis for the view that error attends denial of lump sum alimony. Clark v. Clark, 293 So.2d 447 (Miss. 1974) (where alimony is appropriate, its purposes may be accomplished by a lump sum award or monthly alimony payments or both).
The assignment of error is denied.

V.
Cecile next argues that the $300.00 per month child support payments ordered by the Chancery Court were inadequate. Once more she swims upstream against our limited scope of review. The Chancery Court enjoys broad discretion in determining the amount of child support, and its decision is not to be set aside unless it is against the overwhelming weight of the evidence. Ladner v. Ladner, 436 So.2d 1366 (Miss. 1983); Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). Under the facts and circumstances of the case at bar, we have no basis for holding that the award of $300.00 per month for the support of one minor child was an abuse of discretion.
The assignment of error is denied.

VI.
Finally, there is the matter of attorneys fees. We find no error in the Chancery Court's denial of Cecile's prayer for attorneys fees. On the other hand, Cecile has prevailed here on one important feature of the case. Her motion for assessment of attorneys fees on appeal is granted. Within thirty days of issuance of the mandate, Leo shall pay to Cecile $500.00 as attorneys fees incident to this appeal.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED; MOTION TO ASSESS ATTORNEYS FEES ON APPEAL GRANTED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.