ROBBIE C. FINK, Plaintiff/Appellee v. CALVIN L. FINK, Defendant/Appellant

No. 9426DC242

(Filed 17 October 1995)

**1. Divorce and Separation § 201 (NCI4th)— alimony—custodial parent—determination of dependency—consideration of child care expenses**

Child care expenses incurred by a custodial parent constitute a "condition" to be considered by the trial court in determining whether the custodial parent is dependent and thus entitled to alimony.

**Am Jur 2d, Divorce and Separation § 569.**

**2. Divorce and Separation § 201 (NCI4th)— alimony—consideration of financial and caregiving obligations of custodial spouse—consideration of other spouse's obligations required**

The noncustodial spouse's child support contributions must also be considered in determining whether the custodial parent is dependent and thus entitled to alimony.

**Am Jur 2d, Divorce and Separation § 569.**

**3. Divorce and Separation § 201 (NCI4th)— child support— defendant's obligation figured according to guidelines— plaintiff's obligation figured differently—error**

Where the consent order executed by the parties reflected defendant's child support obligation by application of the current child support guidelines to the stated respective gross incomes of plaintiff and defendant and without additional findings, it was reversible error for the trial court to make its own calculations, based upon plaintiff's testimony and financial affidavit, regarding the actual reasonable needs of the parties' child and plaintiff's contribution thereto. Therefore, having employed defendant's child support obligation under the guidelines, the trial court was correspondingly required to calculate plaintiff's obligation thereunder and utilize that figure in its dependency determination.

**Am Jur 2d, Divorce and Separation § 569.**

### 4. Divorce and Separation § 279 (NCI4th)— alimony—consideration of health insurance premium

The trial court, in an alimony action, did not err in removing from its calculation of defendant husband's reasonable needs and expenses the $119 for health insurance for the minor child of the parties claimed on his affidavit, since the court credited defendant with $119 per month to compensate for the amount withheld from his wages for medical insurance for the minor child.

**Am Jur 2d, Divorce and Separation § 713.**

### 5. Divorce and Separation § 220 (NCI4th)— alimony action—exclusion of gift from income—inclusion of debt to father—no error

The trial court in an alimony action did not err in failing to include in plaintiff's income the sum of $2,000 received annually as a Christmas gift from plaintiff's father, nor did the court err in including in plaintiff's expenses payments on a loan made to her by her father.

**Am Jur 2d, Divorce and Separation §§ 576-583, 653-669.**

Judge WYNN dissenting.

Appeal by defendant from judgment filed 24 August 1993 by Judge Jane V. Harper in Mecklenburg County District Court. Heard in the Court of Appeals 21 October 1994.

*Horack, Talley, Pharr & Lowndes, P.A., by Tate K. Sterrett, for plaintiff-appellee.*

*Knox, Knox, Freeman & Brotherton, by Bobby L. Bollinger, Jr., for defendant-appellant.*

JOHN, Judge.

Calvin Fink (defendant) appeals the trial court's award of permanent alimony to Robbie Fink (plaintiff) and brings forward sixteen (16) assignments of error. For the reasons set forth herein, we reverse the decision of the trial court.

Relevant procedural and factual information is as follows: The parties were married 22 July 1973 and separated 23 July 1989. One child was born of the marriage, Jennifer Lee Fink.

On 1 October 1991, plaintiff filed a complaint seeking absolute divorce, temporary and permanent alimony, attorneys' fees, custody and child support of the minor child, and equitable distribution.

On 18 November 1991, a consent order was entered vesting custody of the minor child with plaintiff and providing for liberal visitation by defendant. Child support was set in the amount of $425.00 per month and defendant was further directed to maintain an insurance policy covering the child's medical needs and to defray certain orthodontic expenses of the child. Plaintiff's monthly gross income was specified as $1,426.00 and defendant's as $3,179.00. The order also provided:

> The application of the current child support guidelines to the facts of this case would result in a child support award from defendant to plaintiff of approximately $425.00 per month, together with an additional sum for expenses in connection with orthodontic appliances for the child. There is no reason which justifies deviation from the child support guidelines at this time.

On 6 January 1992, defendant answered plaintiff's complaint, and on 4 June 1993, the parties entered into a consent judgment regarding equitable distribution. By stipulation, defendant conceded he had committed acts constituting "grounds for alimony within the meaning of N.C.G.S. § 50-16.2," and the subsequent alimony hearing was limited to the issues of dependency and "whether Plaintiff has committed acts which would be grounds for alimony if she were the supporting spouse" so as to disallow alimony or reduce the amount of alimony otherwise payable.

The trial court's judgment included the following pertinent findings of fact:

## C.

### INCOME AND EARNING CAPACITY

. . . .

17. Defendant has various sums withheld from his wages for income taxes and social security. He also has withheld from his wages the sum of $119.00 per month, to pay for medical insurance coverage for the Child. . . .

18. Taking into account defendant's actual income tax liability, rather than the sums withheld from his wages, and also taking

into account the cost of medical insurance coverage which defendant provides for the Child and the sums contributed to defendant's retirement plan, defendant has net income of approximately $2,099.00 per month.

. . . .

## D.

### ESTATES

. . . .

26. Since the date of separation, plaintiff has acquired a 1992 Chevrolet Lumina automobile, which was purchased for her by her father. Plaintiff has made a number of payments to her father and is attempting to pay him $200.00 per month to repay the purchase price of this automobile.

. . . .

## G.

### DEFENDANT'S NEEDS

. . . .

35. Defendant has reasonable needs of $504.00 per month for food, clothing, personal care, entertainment, uninsured medical, gifts, travel and vacation and other items; and, defendant has reasonable expenses of $584.00 per month for rent, household maintenance and repair, utilities, cable, gas for auto, auto maintenance and repair, car insurance, and other items. His total reasonable needs for his own support and maintenance is $1,088.00 per month.

## H.

### CHILD'S NEEDS

36. In addition to medical insurance coverage and the other needs which defendant directly provides for the parties' child, Jennifer Lee Fink, the Child has other reasonable needs for her support and maintenance of $1,192.00 per month, . . . .

. . . .

## J.

### DEPENDENCY

. . . .

42. As set out above, in addition to the medical insurance coverage and other needs which defendant provides directly for the Child, the Child has reasonable needs for her support and maintenance of $1,192.00 per month.

43. Defendant contributes $425.00 per month in child support to defray the Child's needs of $1,192.00 per month. The plaintiff provides the remaining $767.00 per month of the Child's needs.

44. As set out above, in computing the amount of defendant's net income at $2,099.00 per month, the Court took into account and gave defendant credit for $119.00 per month which was withheld from his wages to provide medical insurance coverage for the Child. After considering the amount of child support paid by defendant and after also considering the additional $177.00 per month expended by defendant in directly providing certain needs for the Child, defendant has available $1,497.00 per month to meet his own needs of $1,088.00 per month ($2,099.00 net income, minus $425.00 child support, and minus $177.00 other expenses provided directly for Child).

45. After subtracting from [plaintiff's] net income of $1,260.00 per month the $767.00 per month which she contributes towards the Child's needs, plaintiff has available $493.00 per month to contribute towards her own needs of $1,055.00 per month. Thus, she has a shortfall of $562.00 per month in meeting her own needs.

46. Plaintiff is unable to meet her living expenses and needs and is unable to maintain her accustomed standard of living without financial contribution from defendant.

47. Plaintiff is in need of support and maintenance from defendant in order to meet her living expenses and needs.

. . . .

## L.

### AMOUNT OF ALIMONY

51. Considering all of the foregoing facts and circumstances, the amount of alimony which is necessary for defendant to pay to

plaintiff in order to enable plaintiff to meet her living expenses and needs, in accordance with her accustomed standard of living, is $562.00 per month.

52. Taking into account the foregoing facts and circumstances, and also considering defendant's ability to contribute towards plaintiff's needs and expenses, the amount of alimony which defendant is able to afford to contribute, at the present time, is $409.00 per month.

Based on its findings, the court ordered defendant to pay $409.00 per month in permanent alimony and $6,000.00 in attorneys' fees. Defendant gave notice of appeal to this Court 20 September 1993.

I.

[1]   Defendant first contends the trial court committed reversible error by including in plaintiff's "needs a sum for the support of the minor child," particularly under circumstances "when a Guideline child support consent order had previously been entered and the amount so included exceeded her presumed child support obligations under the Guidelines." We find defendant's argument persuasive in part.

"Alimony" is defined as "payment for the support and maintenance of a spouse, either in lump sum or on a continuing basis, ordered in an action for divorce . . . ." N.C. Gen. Stat. § 50-16.1(1) (1987). Only a dependent spouse, that is, one "who is actually substantially dependent upon the other spouse for his or her maintenance and support or is substantially in need of maintenance and support from the other spouse," N.C. Gen. Stat. § 50-16.1(3) (1987), is entitled to alimony in North Carolina. N.C. Gen. Stat. § 50-16.2 (1987).

"Actually substantially dependent" means "the spouse seeking alimony must have actual dependence on the other in order to maintain the standard of living in the manner to which that spouse became accustomed during the last several years prior to separation." *Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d 849, 854 (1980). " 'Substantially in need of' [support]" means that the dependent spouse "would be unable to maintain his or her accustomed standard of living (established prior to separation) without financial contribution from the other." *Id.* at 181-82, 261 S.E.2d at 855. From Finding of Fact No. 46, it appears the trial court based its determination of dependency upon plaintiff's being substantially in need of defendant's support.

Whether a spouse is "substantially in need of maintenance and support" as defined by G.S. § 50-16.1(3) "is determined by construing this statute *in pari materia* with the terms of N.C. Gen. Stat. § 50-16.5" which prescribes factors for the trial court to consider in determining the amount of alimony. *Lamb v. Lamb,* 103 N.C. App. 541, 548, 406 S.E.2d 622, 626 (1991) (citing *Williams,* 299 N.C. at 182, 261 S.E.2d at 855). Thus, "[i]n determining the needs of a dependent spouse, all of the circumstances of the parties should be taken into consideration including the property, earnings, earning capacity, condition and accustomed standard of living of the parties." *Peeler v. Peeler,* 7 N.C. App. 456, 461, 172 S.E.2d 915, 918 (1970); *accord Sprinkle v. Sprinkle,* 17 N.C. App. 175, 182, 193 S.E.2d 468, 474 (1972). As stated more specifically in *Williams:*

> Applying the factors of G.S. 50-16.5, we think the legislature intended trial courts to determine dependency under G.S. 50-16.1(3) bearing in mind these propositions:
>
> . . . .
>
> A. The trial court must determine the standard of living socially and economically, to which the parties *as a family unit* had become accustomed during the several years prior to their separation.
>
> B. It must also determine the present earnings and prospective earning capacity and any other *"condition"* (such as health and child custody) of each spouse at the time of hearing.
>
> C. After making these determinations, the trial court must then determine whether the spouse seeking alimony has a demonstrated need for financial contribution from the other spouse in order to maintain the standard of living of the spouse seeking alimony in the manner to which that spouse became accustomed during the last several years prior to separation. This would entail considering what reasonable expenses the party seeking alimony has, *bearing in mind the family unit's accustomed standard of living.*

*Williams,* 299 N.C. at 182-83, 261 S.E.2d at 855-56 (emphasis added). The list of factors shall not be construed as exhaustive since "the 'overriding principle' in cases determining the correctness of alimony is 'fairness to all parties.'" *Marks v. Marks,* 316 N.C. 447, 460, 342 S.E.2d 859, 867 (1986) (quoting *Beall v. Beall,* 290 N.C. 669, 679, 228 S.E.2d 407, 413 (1976)).

### FINK v. FINK

[120 N.C. App. 412 (1995)]

In Finding No. 45 of its order, within the section entitled "DEPENDENCY," the trial court stated plaintiff "has a shortfall of $562.00 per month in meeting her own needs" after contributing $767.00 towards the child's needs. The question becomes, therefore, whether child care expenses incurred by a custodial spouse should be taken into account in a finding of dependency, i.e., whether the expenses incurred as a caregiver is one of the factors contemplated in *Williams* and by our alimony statutes. We believe consideration of the practical realities confronting divorced parents as well as the purposes of our domestic relations law require an affirmative response.

One commentator has noted that "[t]he first and most important of the functions of alimony relates to the care of children." Homer H. Clark, Jr., *The Law of Domestic Relations in the United States* § 17.5, at 253 (2d ed. 1987). The author explains that even if a divorced custodial parent works outside the home and receives child support, it remains likely that the custodial spouse's income will be insufficient to support himself or herself as well as the parties' children. *Id.* at 253-54 (citing Weitzman, *The Economics of Divorce: Social and Economic Consequences of Property, Alimony and Child Support Awards*, 28 U.C.L.A.L.Rev. 1181 (1981)). "In this situation [he or] she should be entitled to alimony as a way of providing for the care of the children in a family setting." *Id.* at 254.

Our Supreme Court, which in *Williams* cited child custody as a "condition" affecting the dependency decision, *Williams*, 299 N.C. at 183, 261 S.E.2d at 856, noted therein that "maintenance and support" under our alimony statute "means more than a level of mere economic survival." *Id.* at 181, 261 S.E.2d at 855. The phrase "contemplates the economic standard [of living] established by the marital partnership *for the family unit* during the years the martial contract was intact." *Id.* (emphasis added).

Thus, if the trial court must consider child custody as a "condition" which influences the dependency decision, it logically follows that the accompanying obligations—not only "the responsibility of providing for the spiritual, intellectual, and emotional development of the child" pointed out by the dissent—but also financial responsibilities must be weighed by the court in that determination. The "accustomed" economic standard of living of "the family unit," *id.*, can only be interpreted to encompass that maintained by the parents as well as any minor children born of the marriage. *See Talent v. Talent*, 76 N.C. App. 545, 548, 334 S.E. 2d 256, 258 (1985) (to "determine whether . . .

actual dependence exists, the trial court must evaluate the parties' incomes and expenses measured by the standard of living of the family as a unit"). Moreover, it would in actual terms be difficult, if not impossible, to differentiate between the standard maintained by parents on the one hand and their minor children on the other.

In addition, the trial court is accorded substantial discretion to deal with the unique circumstances of each individual and family pursuant to N.C. Gen. Stat. § 50-16.5(b) (1987). This provision, read *in pari materia* with G.S. § 50-16.1(3), allows the trial court in determining dependency to take into account " 'other facts of the particular case.' " *See Lamb*, 103 N.C. App. at 548, 406 S.E.2d at 626. "Other facts" which have been recognized by our appellate courts include length of the marriage and contributions "to the financial status of the family over the years," *Williams*, 299 N.C. at 185, 261 S.E.2d at 857, marital fault, *id.* at 187-188, 261 S.E.2d at 858, income tax consequences, *Perkins v. Perkins*, 85 N.C. App. 660, 667, 355 S.E.2d 848, 852, *disc. review denied*, 320 N.C. 633, 360 S.E.2d 92 (1987), and the effects of inflation, *see Roberts v. Roberts*, 38 N.C. App. 295, 302-03, 248 S.E.2d 85, 89 (1978). We believe recognition by the trial court of the custodial parent's attendant caregiving and monetary obligations to the minor child is consistent with such previously approved examples.

Defendant nonetheless argues the court's order intertwined alimony and child support and has the effect of increasing the amount of child support even though it is denominated "alimony." We recognize that

> [a]limony is payment for support of a former spouse and child support is payment for support of a minor child[,] . . .[and] the two must be kept separate when the court determines the appropriate awards as to each[,] the distinction between the two kinds of payments is easily blurred, particularly when the child for whom the support is needed resides primarily with the recipient of the alimony.

*Wolfburg v. Wolfburg*, 27 Conn. App. 396, 402, 606 A.2d 48, 52 (1992) (citation omitted).

However, where family dissolution occurs, one of the policies of domestic relations law is "to make as easy and as equitable an adjustment as possible with due regard to the interests of the parties, society and the state." 3A Norman J. Singer, *Sutherland Statutory*

*Construction*, § 68.01, at 92 (5th ed. 1992). Children, as part of "the family unit," *Williams*, 299 N.C. at 181, 261 S.E.2d at 855, are no less affected by divorce than separating spouses, society or the state. We therefore hold that custodial responsibilities constitute a "condition" to be considered by the trial court in its determination of dependency so as to effect as equitable an adjustment as possible, with due regard to all affected interests.

Our holding finds support in other jurisdictions which allow consideration of such obligations in the dependency decision as well as in determining the amount of support awarded. In *McNally v. McNally*, 516 So.2d 499 (Miss. 1987), the Supreme Court of Mississippi noted:

> Incident to a judgment for divorce, a chancery court has authority to award alimony after considering, weighing and balancing familiar factors: (1) the health and earning capacity of the husband, (2) the health and earning capacity of the wife, (3) the entire sources of income of both parties, . . . (5) *the reasonable needs of the child*, . . . and (9) such other facts and circumstances bearing on the subject that might be shown on the evidence.

*Id.* at 501 (emphasis added) (citing *Brabham v. Brabham*, 226 Miss. 165, 84 So.2d 147 (1955)). In *Hammonds v. Hammonds*, 597 So.2d 653, 655 (Miss. 1992) (citations omitted), the court held the trial court should take into account as a qualifying factor for alimony "[t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care." *See also Wolfburg*, 27 Conn. App. at 401-02, 606 A.2d at 51-52 (trial court may consider provision of primary care for minor child in determining term of alimony); *Fields v. Fields*, 343 S.W.2d 168, 170 (Mo. App. 1960) (factor which properly may affect amount of award is "whether there are minor children and their ages") (citations omitted); *Barber v. Barber*, 257 Ga. 488, 490, 360 S.E.2d 574, 576 (1987) (one of many circumstances for court to take into account in setting amount of alimony is expense custodial spouse incurs in support of minor children).

Numerous other states have enacted statutes which include custodial obligations among the factors pertinent to a determination of spousal maintenance awards. *See, e.g.*, Iowa Code Ann. § 598.21(3)(e) (West 1995) and Wis. Stat. Ann. § 767.26(5) (West 1993) (factors to consider include custodial "responsibilities for children"); La. Civ. Code Ann. art. 112(A)(2)(f) (West 1993) (court should consider "[t]he

FINK v. FINK

[120 N.C. App. 412 (1995)]

health and age of the parties and their obligations to support or care for dependent children"); N.Y. Dom. Rel. Law § 236[B][6][a][6] (McKinney 1986) ("the court shall consider . . . the presence of children of the marriage in the respective homes of the parties"); Or. Rev. Stat. § 107.105(1)(d)(G) (1993) (factors include "[t]he number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to the custody of the children, including the length of time child support obligations will be in effect"); 23 Pa. Cons. Stat. Ann. § 3701(b)(7) (1991) (factors include "[t]he extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child"); W. Va. Code § 48-2-16(b)(15) (1995) (court should take into account "[t]he legal obligations of each party to support himself or herself and to support any other person").

While North Carolina's alimony statute, unlike the foregoing, does not contain express language which specifically allows consideration of the custodial spouse's caregiving obligations to the minor children, our holding is nonetheless consistent with the " 'overriding principle' " of " 'fairness' " which guides the determination of alimony, *Marks*, 316 N.C. at 460, 342 S.E.2d at 867 (citation omitted), as well the statutory provision contemplating regard of "other facts of the particular case." G.S. § 50-16.5(a).

[2] There remains the question of methodology. If the trial court is to take into account the custodial spouse's financial and caregiving obligations in determining dependency, "fairness" unquestionably requires that the noncustodial spouse's contributions in this area also be considered. In the "DEPENDENCY" section of its order, the trial court properly accorded defendant the benefit of the $425.00 in child support paid monthly. It is less clear whether the $177.00 per month (as insurance and orthodontic payments) directly contributed to the child's needs was fully considered.

Also in the "DEPENDENCY" section, the court's order recites that "the Child has reasonable needs for her support and maintenance of $1,192.00 per month." By subtracting defendant's Guideline child support contribution of $425.00 per month, the court therein calculated that "plaintiff provides the remaining $767.00 per month of the Child's needs." In the same section, the court subtracted the $767.00 figure from plaintiff's net income of $1,260.00 per month, and concluded "plaintiff [thus] has a shortfall of $562.00 per month in meeting her own needs."

**FINK v. FINK**

[120 N.C. App. 412 (1995)]

We initially note that since a previous order was in effect establishing defendant's child support obligation under the Guidelines, the parties are collaterally estopped, absent a motion for modification, *see* N.C. Gen. Stat. § 50-13.7 (1987), from asserting amounts different from those set out in the previous order relating to the child's needs and the parties' obligations arising therefrom. *See Burton v. City of Durham*, 118 N.C. App. 676, 680, 457 S.E.2d 329, 331-32, *disc. review denied and cert. denied*, No. 254P95, (N.C. Sept. 7) (1995) ("Collateral estoppel precludes relitigation of an identical issue actually litigated and necessary to the outcome in a prior action that resulted in a final judgment on the merits.") (citations omitted). Thus, absent a request for modification based upon a substantial change in circumstances, the trial court lacks jurisdiction to alter previous child support determinations. *Kennedy v. Kennedy*, 107 N.C. App. 695, 703, 421 S.E.2d 795, 799 (1992) (trial court may not *sua sponte* enter an order modifying a previously entered custody decree). This would hold true whether the previous order utilized Guideline amounts or deviated therefrom and recorded the court's own calculations.

[3] The consent order executed by the parties on 18 November 1991 reflected defendant's child support obligation by "application of the current child support guidelines" to the stated respective gross incomes of plaintiff and defendant and without additional findings. *See Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991) (under the Guidelines and absent request, trial court is not required to make findings of fact or enter conclusions of law " 'relating to the reasonable needs of the child for support and the relative ability of each parent to [pay or] provide support.' ") (quoting N.C. Gen. Stat. § 50-13.4(c) (Cum. Supp. 1990)). In *Browne*, we explained that "support set consistent with the guidelines is *conclusively presumed* to be in such amount as to meet the reasonable needs of the child for health, education and maintenance." *Id.* (emphasis added).

Because defendant's child support obligation had been determined under the Guidelines, defendant argues it was reversible error for the trial court to make its own calculations, based upon plaintiff's testimony and financial affidavit, regarding the actual reasonable needs of the parties' child and plaintiff's contribution thereto. The court, defendant continues, "should have referred to the presumptive guideline child support schedule to determine the amount of Robbie Fink's income from her own employment attributable to her *pro rata* share of the child support." We agree.

> The North Carolina Child Support Guidelines are based on the Income Shares model, which . . . is based on the concept that child support is a shared parental obligation and that a child should receive the same proportion of parental income he or she would have received if the parents lived together.

Commentary, 1995 North Carolina Child Support Guidelines. Thus, the basic child support obligation is computed using the combined adjusted gross income of both parents.

As child support under the Guidelines is conceived as a "shared parental obligation" and defendant's contribution was established by application of those Guidelines, the trial court erred by not utilizing the same methodology in its calculation of plaintiff's contribution. Having employed defendant's child support obligation under the Guidelines, the trial court was correspondingly required to calculate plaintiff's obligation thereunder and utilize that figure in its dependency determination. To hold otherwise would credit plaintiff with more than her proportionate parental share, a concept not contemplated under the Income Shares model of our child support guidelines scheme. *See Kennedy*, 107 N.C. App. at 698, 421 S.E.2d at 796-97 (father's share, based on gross monthly income of $2,500.00, calculated at 58.5% of presumptive guideline amount; mother's share, based on gross monthly income of $1,744.00, calculated at 41.5% of presumptive amount). In other words, plaintiff may not receive the benefit of a finding of dependency based in part upon her *actual* child support expenditures where defendant is credited only with his Guideline *proportionate share*.

We therefore reverse the award of permanent alimony to plaintiff and remand for a determination of dependency consistent with this opinion and entry of a new order. The trial court should rely on the existing record (since a full-blown re-trial is unnecessary) and receive additional evidence and entertain argument only as necessary to correct the error identified above. *See Fox v. Fox*, 114 N.C. App. 125, 138, 441 S.E.2d 613, 621 (1994) (citation omitted).

Because the trial court's award to plaintiff of counsel fees was based upon its conclusion she was a dependent spouse, we must vacate that award as well. Should the court on remand again determine plaintiff to be entitled to counsel fees, *see Fungaroli v. Fungaroli*, 53 N.C. App. 270, 273, 280 S.E.2d 787, 790 (1981), it may enter a new award, N.C. Gen. Stat. § 50-16.4 (1987), in such reasonable amount as it in its discretion deems appropriate. *See Rickert v.*

*Rickert,* 282 N.C. 373, 379, 193 S.E.2d 79, 83 (1972) (citations omitted).

In view of the foregoing, it is unnecessary to address further defendant's assignments of error addressed to the amount of alimony set by the trial court or its award of attorneys' fees to plaintiff. As defendant's remaining arguments address matters unaffected by our holding, however, we will consider those contentions briefly.

## II.

**[4]** Defendant maintains the trial court erred in its calculation of his reasonable needs and expenses, particularly in deducting $119.00 for health insurance. We disagree.

"The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves." *Whedon v. Whedon,* 58 N.C. App. 524, 529, 294 S.E.2d 29, 32, *disc. review denied,* 306 N.C. 752, 295 S.E.2d 764 (1982) (citation omitted).

In calculating defendant's net income, the trial court credited him $119.00 per month to compensate for the amount withheld from his wages to defray the cost of medical insurance for the minor child. However, defendant also included $119.25 on the affidavit outlining his individual needs. Certainly, defendant cannot expect to receive the benefit of that expense twice in the court's calculations, once as a reduction in income and once as a personal expense. The trial court did not abuse its discretion in removing from its calculation of defendant's reasonable needs the $119.25 claimed on his affidavit.

## III.

**[5]** Defendant also argues the trial court erred by not including "certain third party payments" as part of plaintiff's income and by "excluding certain non-binding debts as expenses for the purposes of determining dependency and alimony." We find these assertions unpersuasive.

## A.

Defendant first assigns error to the trial court's failure to include in plaintiff's income the sum of $2,000.00 per year received annually as a Christmas gift from her father. The amount should be included, defendant insists, "because these payments from her father have

FINK v. FINK

[120 N.C. App. 412 (1995)]

habitually occurred and customarily would continue" in the future. This contention is unfounded.

Evidence presented revealed that plaintiff and her siblings have received gifts of money from their father each Christmas since the death of their mother. The amounts have varied, but in recent years single children have been given $2,000.00 and married children $1,000.00. On the Christmas following her divorce, plaintiff received a $2,000.00 credit towards the debt owed her father for her automobile. Plaintiff testified she had no way of knowing whether her father planned to continue his monetary gifts, and that she felt "sure that if he would have a medical problem, something that money was needed for something else, [the payments] could easily [be] stopped . . . ." At the time of hearing, plaintiff's father was 78 years old and in fair health, having undergone open heart surgery. No evidence indicated either that the payments to plaintiff from her father would continue or that the amount would necessarily remain constant. We therefore discern no error in the trial court's refusal to include the monetary Christmas gifts from plaintiff's father in calculating her income.

## B.

Defendant next asserts the court erred by including in plaintiff's expenses payments on a loan made to her by her father because "it was unfair to include this 'moral obligation' as part of Robbie Fink's 'reasonable needs' for alimony." We discern no such error.

The evidence reflected plaintiff's father purchased an automobile for her and that the two had agreed plaintiff would reimburse him. Plaintiff testified that although she had signed no papers upon purchase of the vehicle, she was "trying [her] best to pay him a couple hundred dollars a month." Evidence further revealed plaintiff had indeed made payments to her father in the amount of $200.00 per month towards the loan. While plaintiff conceded she was under no legal duty to repay the loan, she testified she considered it a "responsibility" and felt obligated to reimburse her father.

We note defendant stipulated "that there is sufficient competent evidence to support the findings of the trial court with respect to the types and amounts of the needs and expenses of the parties and the child, which are set forth in Finding of Fact Nos. 33, 35, and 36 of the Judgment." Included in Finding of Fact Nos. 33 and 36 is plaintiff's $200.00 payment on her automobile, $100.00 being allocated to plaintiff's needs and expenses and $100.00 being allocated to the minor

**FINK v. FINK**

[120 N.C. App. 412 (1995)]

child's needs. Therefore, defendant may not now be heard to complain before this Court about those amounts. *See Sloop v. Friberg*, 70 N.C. App. 690, 694, 320 S.E.2d 921, 924 (1984) (courts look with favor on stipulations between parties in domestic cases and therefore consider them binding) (citation omitted).

Reversed in part; vacated in part; remanded with instructions.

Judge GREENE concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

The majority concludes today that child care expenses incurred by a custodial spouse should be taken into account in a finding of dependency in the determination of alimony. I disagree.

In the fifteen years since the Supreme Court in *Williams v. Williams*, 299 N.C. 174, 261 S.E.2d 849 (1979), parenthetically indicated that "child custody" may be an "other condition" that the trial court may consider at the time of hearing on an alimony claim, no court in this state has ever interpreted that to mean "child support expenses." Today, the majority takes that novel step and in doing so inextricably intertwines the determination of alimony dependency with the determination of child support.

In *Williams*, the Supreme Court listed certain propositions to be considered in the determination of dependency. Among these propositions, the Court stated that trial courts *may* consider "any other 'condition' (such as health and child custody) of each spouse at the time of hearing." *Id.* at 183, 261 S.E.2d at 856. Based on this language alone, the majority now concludes that child care expenses must be a factor for the trial court to consider in determining the amount of alimony.

In my opinion the language in *Williams* should not be confined to equate "child custody" with "child support expenses." The legislature has enacted separate statutes to govern child support and child custody and in doing so it has attached two different meanings to the terms. *See* N. C. Gen. Stat. § 50-13.4 and N.C. Gen. Stat. § 50-13.1. Child support involves providing for the financial well-being of the child. In a determination of child support, the court must calculate the expenses incurred for rearing the child.

*See* N.C. Gen. Stat. § 50-13.4. Child custody, on the other hand, involves more than financial responsibility. A parent with physical custody of a child has the responsibility of providing for the spiritual, intellectual, and emotional development of the child. Therefore, in a custody hearing, a court must evaluate several factors in its determination of what is in the best interests of the child. *See* N.C. Gen. Stat. § 50-13.2.

Moreover, I disagree with the majority's statement that "if the trial court *must* consider child custody as a 'condition' which influences the dependency decision . . . financial responsibilities must be weighed . . . ." (emphasis added). First, *Williams* states only in dicta that the trial court *may* consider factors such as child custody. Second, the financial responsibilities for child custody is handled by the determination of child support. Third, the award of child custody may be more of a benefit than a detriment for indeed, many parents vigorously seek custody for the benefits of having their child(ren) which means constant companionship and the love and joy that flows from being a parent and having your child with you. In contrast, the noncustodial parents may be deprived of these benefits and often find themselves relegated to the role of a secondary parent with defined visits. That is why child support and child custody are two separate determinations, for while the former is a quantitative financial detriment, the latter is and should be a qualitative benefit to the custodial parent.

While the majority correctly notes that children are a part of "the family unit," *See Williams*, 299 N.C. at 183, 261 S.E.2d at 856, the majority also concedes that North Carolina's alimony statute *does not contain express language which specifically allows consideration of the custodial spouse's caregiving obligations to the minor children.* The majority justifies its holding by stating that it is consistent with the "overriding principle" of "fairness" which guides the determination of alimony. However, the result reached today requires the payment of child support expenses under *both* the child support and alimony orders. This is an unfair result.

Moreover, the result reached in this case today will have monumental implications in the area of family law. The minor child in this case will reach age 18 in 1996. At that point, absent any special exceptions, Mr. Fink's child support obligation will end. *See* N. C. Gen. Stat. § 50-13.4(c). However, his alimony obligation will continue until Mrs. Fink remarries or dies; thus, Mr. Fink could potentially pay alimony

**FINK v. FINK**

[120 N.C. App. 412 (1995)]

under this order based on an improper deviation from the Child Support Guidelines for a time period long after his child support obligation has terminated. Accordingly, if child expenses are considered for purposes of determining permanent alimony, then such a consideration necessitates a redetermination of alimony when each child reaches the age of majority. No such result was ever contemplated by our legislature.

Furthermore, when the trial court included the minor child's "needs" of $767.00 in its alimony order, this determination had the effect of rendering two child support orders. A child support consent order had already been entered in accordance with the child support guidelines. That order contained a finding that no deviation from the child support guidelines was justified. Increasing Mrs. Fink's claimed personal needs and expenses by including non-guideline expenses of the minor child resulted in an increase in the amount of child support that Mr. Fink was ordered to pay, although it was denominated "alimony." As such, it is tantamount to modifying the child support order without a motion to modify having been filed and without any evidence or the required findings to justify a deviation from the guidelines.

Our well settled law requires that a motion be filed and a change of circumstances found before a child support order can be modified. N.C. Gen. Stat. § 50-13.7(a) (1987); *McGee v. McGee,* 118 N.C. App. 19, 26, 453 S.E.2d 531, 536 (1995); *Davis v. Risley,* 104 N.C. App. 798, 800, 411 S.E.2d 171, 172 (1991); *Greer v. Greer,* 101 N.C. App. 351, 354, 399 S.E.2d 399, 401 (1991). The changed circumstances must relate to "child-oriented expenses." *Gilmore v. Gilmore,* 42 N.C. App. 560, 563, 257 S.E.2d 116, 118 (1979). No such motion was pending. Indeed, the issue had already been resolved with a court order. It is reversible error for the court to deviate from the presumptive child support guidelines without making the required findings. *Hall v. Hall,* 107 N.C. App. 298, 299-300, 419 S.E.2d 371, 372 (1992). The trial judge must follow the respective applicable statutes in determining alimony and child support. N.C Gen. Stat. §§ 50-16.5(a) and 50-13.4(c); *Beall v. Beall,* 290 N.C. 669, 673, 228 S.E.2d 407, 410 (1976). In this case, the inclusion of the minor child's needs in the alimony determination constitutes an abuse of discretion and reversible error.

For the foregoing reasons, I respectfully dissent from Part I of the majority's opinion.