JOEL ROBINSON, PLAINTIFF v. DAWN ROBINSON, DEFENDANT

No. COA10-604

(Filed 15 March 2011)

## 1. Divorce— equitable distribution—findings—valuation and classification of property

The trial court erred in an equitable distribution order by not making a finding as to the total net value of the marital estate, by not classifying or valuing the marital residence, and by not explicitly classifying another property as separate property.

## 2. Divorce— equitable distribution—agreement—written stipulation required

The trial court erred in an equitable distribution action by concluding that the parties were in agreement concerning the division of certain personal property where there was no written stipulation in the record.

## 3. Divorce— equitable distribution—valuation of property— date of separation—finding binding

Although plaintiff contended that the trial court erred in an equitable distribution action in the date used to value certain accounts, plaintiff did not challenge that finding and it was therefore binding.

## 4. Divorce— alimony—findings—earnings

The trial court did not err in the amount of alimony awarded where the court's finding as to the parties' earnings while married was supported by the record.

## 5. Divorce— alimony—ability to pay

The trial court clearly considered plaintiff's actual ability to pay when determining alimony; the court's inability to make more detailed findings was due to plaintiff's failure to attend the hearing or to submit more detailed information.

**6. Divorce— alimony—consideration of child care expenses**

The trial court erred when determining alimony by determining plaintiff's child support obligation under the Child Support Guidelines, then making its own calculations regarding actual expenses and using that total to determine defendant's shortfall to calculate alimony. Defendant may benefit from having her child care expenses considered in the calculation of alimony, but may not receive the benefit of a finding based in part upon her actual child support expenditures if plaintiff is credited only with his Guideline proportionate share of child support expenses.

**7. Child Custody and Support— retroactive—actual expenditures—findings required**

An order of retroactive child support was reversed and remanded where it contained no findings as to the actual expenditures made for the benefit of the minor children during the relevant time.

**8. Child Custody and Support— plaintiff's income—finding supported by evidence**

There was no merit in a child support action to plaintiff's challenge to a finding concerning his income where the finding was supported by the evidence. The court had before it plaintiff's tax filing, his company's profit and loss statement, and defendant's testimony.

**9. Divorce— equitable distribution—payments toward debt— allocation—debts not properly classified**

The Court of Appeals could not determine in a domestic action whether plaintiff's payments on debts should have been included in equitable distribution or allocated toward plaintiff's alimony and child support obligations where the debts were not properly classified, valued, and distributed.

**10. Appeal and Error— mootness—child visitation—child reaching majority**

A child visitation issue was not addressed where the child had reached majority and was no longer subject to any visitation agreement between his parents.

ROBINSON v. ROBINSON

[210 N.C. App. 319 (2011)]

**11. Attorney Fees— combined domestic action—fees not allocated—underlying issues unresolved—remanded**

    An award of attorney fees in a combined action for equitable distribution, alimony, and child support was vacated and remanded where there were no findings attributing the fees to the underlying actions ("ttorney fees are not recoverable in equitable distribution actions), and underlying issues involving child support were remanded for further action.

Appeal by plaintiff from judgment entered 15 December 2009 by Judge Wendy M. Enochs in Guilford County District Court. Heard in the Court of Appeals 15 November 2010.

*McKinney & Justice, P.A., by Rebecca Perry, for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by Jessica B. Cox, for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiff Joel Robinson and defendant Dawn Robinson[1] were married to each other on 21 December 1985, and separated sometime between 1 September 2006 and 2 January 2007. The parties had two children: Amber, born 28 February 1989, and Anson, born 11 December 1992. From the date of the parties' separation until the children reached the age of majority, they lived with Ms. Robinson. Amber reached the age of majority on 28 February 2007 and Anson recently reached the age of majority on 11 December 2010.

On 6 November 2007, Mr. Robinson filed a complaint for divorce, custody, and equitable distribution. Ms. Robinson filed an answer and counterclaims, seeking custody, child support, post-separation support, alimony, attorney's fees, and equitable distribution. The parties entered into a mediated parenting agreement in February 2008 with regard to Anson, providing that he would reside primarily with Ms. Robinson subject to scheduled visitation with Mr. Robinson, who was then a resident of Georgia. By order entered 4 November 2009, which recites that it was delivered to counsel for both parties, the matter

---

1. Dawn Robinson has apparently begun to use the surname "Zachary" and refers to herself as "Ms. Zachary" throughout her appellee's brief. However, for purposes of consistency with the trial court's order, we will refer to her in this opinion as Ms. Robinson.

was set for trial on 7 December 2009 on the remaining issues of child support, alimony, and equitable distribution.

Neither Mr. Robinson nor his then-attorney attended the 7 December 2009 hearing. The trial court heard evidence offered by Ms. Robinson and entered an Order and Judgment in which it made a distribution of property, set the 2010 visitation schedule for Anson, awarded retroactive and prospective child support, awarded alimony in the amount of $1,900.00 per month, and awarded attorney's fees in the amount of $12,836.40. Mr. Robinson appeals.

On appeal, Mr. Robinson presents six issues for our review. He contends the trial court (I) erred in its equitable distribution of the parties' property and debts, (II) erred in awarding alimony, (III) erred in awarding child support, (IV) erred in calculating that he owed amounts for retroactive alimony and child support, (V) erred in setting the visitation schedule, and (VI) erred in awarding Ms. Robinson attorney's fees.

## I. Equitable Distribution

[1] Mr. Robinson first contends the trial court erred by failing to identify, classify, value, and distribute all of the parties' property and debts. Our review of an equitable distribution order is limited to determining whether the trial court abused its discretion in distributing the parties' marital property. *Hartsell v. Hartsell*, 189 N.C. App. 65, 68-69, 657 S.E.2d 724, 726 (2008) (quoting *Stone v. Stone*, 181 N.C. App. 688, 590, 640 S.E.2d 826, 827-28 (2007)); *Beightol v. Beightol*, 90 N.C. App. 58, 60, 367 S.E.2d 347, 348 ("The distribution of marital property is vested in the discretion of the trial courts and the exercise of that discretion will not be upset absent clear abuse."), *disc. review denied*, 323 N.C. 171, 373 S.E.2d 104 (1988). "Accordingly, the findings of fact are conclusive if they are supported by any competent evidence from the record." *Beightol*, 90 N.C. App. at 60, 367 S.E.2d at 348 (citing *Alexander v. Alexander*, 68 N.C. App. 548, 552, 315 S.E.2d 772, 776 (1984)).

However, even applying this generous standard of review, there are still requirements with which trial courts must comply. Under N.C.G.S. § 50-20(c), equitable distribution is a three-step process; the trial court must (1) "determine what is marital [and divisible] property"; (2) "find the net value of the property"; and (3) "make an equitable distribution of that property." *Beightol*, 90 N.C. App. at 63, 367 S.E.2d at 350.

ROBINSON v. ROBINSON

[210 N.C. App. 319 (2011)]

Mr. Robinson contends the trial court erred by not including findings as to the classification or value of a number of different items of property and debts, including: the marital residence located at 4625 Jamesford Drive, the home located at 3114 Iron Gate Trail titled in the names of both parties and Ms. Robinson's father, certain bank accounts, vehicles, vehicle loans, the home mortgages, and the total net marital estate. We agree.

The first step of the equitable distribution process requires the trial court to classify *all* of the marital and divisible property—collectively termed distributable property—in order that a reviewing court may reasonably determine whether the distribution ordered is equitable. *See Cunningham v. Cunningham*, 171 N.C. App. 550, 555-56, 615 S.E.2d 675, 680 (2005). In fact, "to enter a proper equitable distribution judgment, the trial court must specifically and particularly *classify and value all assets and debts maintained by the parties at the date of separation.*" *Dalgewicz v. Dalgewicz*, 167 N.C. App. 412, 423, 606 S.E.2d 164, 171 (2004) (emphasis added). In determining the value of the property, the trial court must consider the property's market value, if any, less the amount of any encumbrance serving to offset or reduce the market value. *Alexander*, 68 N.C. App. at 550-51, 315 S.E.2d at 775. Furthermore, "in doing all these things the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." *Carr v. Carr*, 92 N.C. App. 378, 379, 374 S.E.2d 426, 427 (1988) (citing *Wade v. Wade*, 72 N.C. App. 372, 376, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985)).

In this case, the trial court made no finding with respect to the total net value of the parties' marital estate. *See, e.g., id.* (finding that the order was incomplete as it failed to contain findings of fact concerning the net value of the total marital estate.); *Little v. Little*, 74 N.C. App. 12, 18, 327 S.E.2d 283, 288 (1985). Moreover, there was no finding as to the classification or value of the marital residence at 4625 Jamesford Drive, where Ms. Robinson was still living as of the hearing, notwithstanding substantial evidence in the record as to its value. *See Soares v. Soares*, 86 N.C. App. 369, 371-72, 357 S.E.2d 418, 419 (1987). In fact, the court failed to even mention that residence at 4625 Jamesford Drive in its order. With respect to the property located at 3114 Iron Gate Trail, the trial court found only that "[t]he parties acquired [the] house and lot at 3114 Iron Gate Trail" and then ordered that Mr. Robinson "convey his one-third undivided interest in said residence to [Ms. Robinson] and her father." While Ms.

Robinson's testimony with respect to that property leads this Court to believe that the trial court meant to classify the 3114 Iron Gate Trail property as separate property, it failed to explicitly do so. It is not enough that evidence can be found within the record which could support such classification; the court must actually classify all of the property and make a finding as to the value of all marital property. *Warren v. Warren*, 175 N.C. App. 509, 514-15, 623 S.E.2d 800, 804 (2006) (citing *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980)).

**[2]** In a related argument, Mr. Robinson also challenges the trial court's finding of fact that the parties

> have stipulated and agreed that each should keep the household furniture and furnishings and vehicles now in each party's possession, having an approximately equal value. The parties have further stipulated and agreed that the defendant should be distributed her individual checking account having a balance of $329.45 and the joint checking account having a balance of $1,000.00 and that plaintiff should be distributed his individual checking account having a balance of $2,273.10.

Mr. Robinson argues that this finding is not supported by competent evidence because no such stipulation appears in the record. Therefore he contends the trial court erred by not valuing and distributing the personal property enumerated in the finding. Decisions of this Court validate his arguments. We have held that a simple oral division of marital property is not binding. *See Holder v. Holder*, 87 N.C. App. 578, 582, 361 S.E.2d 891, 893 (1987); *McIntosh v. McIntosh*, 74 N.C. App. 554, 555, 328 S.E.2d 600, 601 (1985) (providing that a contemporaneous inquiry of parties by trial court is required before accepting oral stipulations regarding distribution of marital property).

Separation agreements are favored, as they "tend to simplify, shorten, or settle litigation as well as save costs to the parties," *McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602, while " 'enabling divorcing partners to come to a mutually acceptable settlement of their financial affairs.' " *Brenenstuhl v. Brenenstuhl*, 169 N.C. App. 433, 435, 610 S.E.2d 301, 303 (2005) (quoting *Hagler v. Hagler*, 319 N.C. 287, 290, 354 S.E.2d 228, 232 (1987)). For this reason, N.C.G.S. § 50-20(d) makes binding such agreements between parties only if they are written, "duly executed, and acknowledged in accordance with the provisions of G.S. 52-10 and 52-10.1" (requiring agreements

between spouses not to be against public policy and be acknowl-edged before a certifying officer not a party to the contract). These requirements for enforcement were enacted to insure against fraud and overreaching on the part of one of the spouses. *McIntosh*, 74 N.C. App. at 556, 328 S.E.2d at 602.

This Court held in *McIntosh* that the

> same scrutiny which is applied to separation agreements must also be applied to stipulations entered into by a husband and a wife regarding the distribution of their marital property. Any agreement entered into by parties regarding the distribution of their marital property should be reduced to writing, duly executed and acknowledged. If . . . oral stipulations are not reduced to writing it must affirmatively appear in the record that the trial court made contemporaneous inquiries of the parties at the time the stipulations were entered into. It should appear that the court read the terms of the stipulations to the parties; that the parties understood the legal effects of their agreement and the terms of the agreement, and agreed to abide by those terms of their own free will.

*Id.*

No evidence of a written stipulation appears in the record before us. The only source for the court's conclusion that the parties were in agreement concerning the division of this personal property was a representation to the court by Ms. Robinson's attorney that they had agreed to such an arrangement. No inquiry was made by the court into the parties' understanding of the terms of their agreement. Therefore, we hold that the trial court's reliance on counsel's repre-sentation was error, and the court should have valued and distributed those items of personal property.

[3] Mr. Robinson also contends the trial court should value the bank and credit accounts as of 1 September 2006, because that is the date upon which the parties separated. He argues that the trial court's values, as recited in the alleged stipulation, appear to have been taken from a spreadsheet offered by Ms. Robinson showing those values "as of late November 2006." While we agree that, "[f]or purposes of equi-table distribution, marital property shall be valued as of the date of the separation of the parties[,]" N.C. Gen. Stat. § 50-21(b) (2009), his contention in this case has no merit. The trial court found that the parties had separated on 24 November 2006 and Mr. Robinson has not

challenged such finding. It is therefore binding. *Langston v. Richardson*, —— N.C. App. ——, ——, 696 S.E.2d 867, 870 (2010).

For the foregoing reasons, we must vacate the equitable distribution order in its entirety and remand this case to the trial court for findings and conclusions which properly classify, value, and distribute the parties' property according to statutory and case law.

## II. Alimony

[4] Mr. Robinson next challenges the trial court's alimony award. "Alimony" is defined as "an order for payment for the support and maintenance of a spouse or former spouse, periodically or in a lump sum, for a specified or for an indefinite term, ordered in an action for divorce, whether absolute or from bed and board, or in an action for alimony without divorce." N.C. Gen. Stat. § 50-16.1A (2009). In awarding alimony, the trial court is required to follow a two-step inquiry: first, the court determines whether a spouse is entitled to alimony, and, then if a spouse is so entitled, the court then determines the amount of alimony to be awarded. *Helms v. Helms*, 191 N.C. App. 19, 23, 661 S.E.2d 906, 909, *disc. review denied*, 362 N.C. 681, 670 S.E.2d 233, (2008), *appeal withdrawn*, 363 N.C. 258, 676 S.E.2d 469 (2009).

In the present case, the court, after noting that Ms. Robinson presently earns "$34,000 per year gross income," "was either unemployed outside the home or employed part time" during the marriage, and that Mr. Robinson "consistently earned over $100,000 per year during the last years of the marriage," determined that Ms. Robinson "is a dependent spouse as that term is defined in G.S. § 50-16.1A(2) and [Mr. Robinson] is a supporting spouse as that term is defined in G.S. § 50-16.1A(5)." The trial court then awarded Ms. Robinson an alimony payment of $1,900.00 per month from the date of separation, continuing for eighteen years from the time of the hearing.

Mr. Robinson does not challenge that Ms. Robinson is entitled to alimony; rather he limits his challenge to the amount of alimony awarded. He argues that the trial court's finding as to the parties' standard of living during the marriage was unsupported by the evidence, that the trial court failed to consider his ability to pay, and that, when determining Ms. Robinson's monthly expenses, it erred by including the expenses of the parties' minor child.

Decisions concerning the amount and duration of alimony are entrusted to the trial court's discretion and will not be disturbed absent a showing that the trial court has abused such discretion.

*Fitzgerald v. Fitzgerald*, 161 N.C. App. 414, 420, 588 S.E.2d 517, 522 (2003). The court is not required to make findings about the weight and credibility which it gives to the evidence before it. *Hartsell*, 189 N.C. App. at 75, 657 S.E.2d at 730.

Mr. Robinson challenges the court's finding that the parties, while married to each other, "consistently earned over $100,000[.00] per year" as not being supported by the evidence. The evidence, however, showed that, according to the parties' tax returns, in 2007 Ms. Robinson made $12,381.00 and Mr. Robinson made $91,024.00. The evidence also showed, again according to the parties' tax records, that Mr. Robinson's 2008 pre-alimony income was $89,936.00, while Ms. Robinson's income was $11,407.00. We conclude therefore that Mr. Robinson's challenge to the court's finding that the parties' income was "over $100,000[.00] per year" is without merit.

[5] Mr. Robinson next contends that, in determining what was an appropriate alimony payment, the trial court failed to consider his ability to pay. After determining that Ms. Robinson was the dependent spouse and that Mr. Robinson was the supporting spouse, the trial court was required to "consider all relevant factors" in determining the amount and duration of alimony. *See* N.C. Gen. Stat. § 50-16.3A(b) (2009). The statute enumerates sixteen relevant, but non-exclusive, factors, including:

(1) The marital misconduct of either of the spouses. . . .;

(2) The relative earnings and earning capacities of the spouses;

(3) The ages and the physical, mental, and emotional conditions of the spouses;

(4) The amount and sources of earned and unearned income of both spouses, including, but not limited to, earnings, dividends, and benefits such as medical, retirement, insurance, social security, or others;

(5) The duration of the marriage;

(6) The contribution by one spouse to the education, training, or increased earning power of the other spouse;

(7) The extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of a minor child;

(8) The standard of living of the spouses established during the marriage;

(9) The relative education of the spouses and the time necessary to acquire sufficient education or training to enable the spouse seeking alimony to find employment to meet his or her reasonable economic needs;

(10) The relative assets and liabilities of the spouses and the relative debt service requirements of the spouses, including legal obligations of support;

(11) The property brought to the marriage by either spouse;

(12) The contribution of a spouse as homemaker;

(13) The relative needs of the spouses;

(14) The federal, State, and local tax ramifications of the alimony award;

(15) Any other factor relating to the economic circumstances of the parties that the court finds to be just and proper;

(16) The fact that income received by either party was previously considered by the court in determining the value of a marital or divisible asset in an equitable distribution of the parties' marital or divisible property.

N.C. Gen. Stat. § 50-16.3A(b). When determining an alimony award, the trial court must at least "make a specific finding of fact on each of the [above listed] factors . . . if evidence is offered on that factor." N.C. Gen. Stat. § 50-16.3A(c). Mr. Robinson does not contend the trial court failed to make findings with respect to any of the factors enumerated by the statute, only that the court failed to consider his ability to pay. While this Court has acknowledged that a critical issue is the supporting spouse's actual ability to make alimony payments, *Barham v. Barham*, 127 N.C. App. 20, 27, 487 S.E.2d 774, 779 (1997), *aff'd per curiam*, 347 N.C. 570, 494 S.E.2d 763 (1998), we have held:

[a]ctual ability to pay is not a factor requiring findings of fact under N.C.G.S. § 50-16.3A(b). Furthermore, "the failure of the court to make a specific finding of fact as to [the supporting spouse's] ability to pay is not deemed a sufficient ground for disturbing the court's order." Although actual ability to pay is relevant to the court's determination of fairness to the parties, it is not error for a court to omit a specific finding of actual ability

to pay where the court clearly considered the defendant's actual ability to pay.

*Swain v. Swain*, 179 N.C. App. 795, 800-01, 635 S.E.2d 504, 508 (2006) (quoting *Mills v. Mills*, 257 N.C. 663, 666, 127 S.E.2d 232, 234 (1962)), *disc. review denied*, 361 N.C. 437, 649 S.E.2d 897 (2007).

Here, the trial court clearly considered Mr. Robinson's "actual ability to pay." *Id.* "The determination of what constitutes the reasonable needs and expenses of a party in an alimony action is within the discretion of the trial judge." *Whedon v. Whedon*, 58 N.C. App. 524, 529, 294 S.E.2d 29, 32, *disc. review denied*, 306 N.C. 752, 296 S.E.2d 764 (1982). "Implicit in this is the idea that the trial judge may resort to [her] own common sense and every-day experiences in calculating the reasonable needs and expenses of the parties." *Bookholt v. Bookholt*, 136 N.C. App. 247, 250, 523 S.E.2d 729, 732 (1999), *superseded on other grounds by statute as stated in Williamson v. Williamson*, 142 N.C. App. 702, 704-05, 543 S.E.2d 897, 898 (2001). The trial court noted that Mr. Robinson "earns an income, including personal expenses paid by [his] company of approximately $90,000[.00] per year." The trial court's inability to make more detailed findings of fact regarding Mr. Robinson's current actual ability to pay was due to his failure to attend and testify at the hearing or to submit more detailed financial information about his current expenses. We believe the court acted within its discretion in relying upon Mr. Robinson's previous year tax records, Ms. Robinson's testimony as to his expenses, and the court's "own common sense and every-day experiences" in order to conclude that the alimony payment was affordable. *See Haddon v. Haddon*, 42 N.C. App. 632, 636, 257 S.E.2d 483, 486 (1979) (conceding that, while "it would be more desirable for the trial court to have more evidence of defendant's earnings and financial condition and that the court make more detailed findings of fact based on such evidence," "such evidence was not available to the court because of defendant's failure or refusal to prepare business records and file income tax returns and that the alimony was temporary," "the evidence and findings are sufficient to support the awards of alimony Pendente lite and child support," and that "the statutory requirements for determining awards for support of dependent children (G.S. 50-13.4) and spouses (G.S. 50-16.5) must be so construed that legislative purpose is not vanquished by the rule of strict construction"). Therefore Mr. Robinson's challenge to the alimony award on this ground is without merit.

[6] Mr. Robinson also contends, with respect to the issue of alimony, that the trial court incorrectly included, in its finding as to Ms. Robinson's expenses, expenses which should have been attributed to Ms. Robinson's portion of the support of the parties' children. He argues that the alimony award effectively requires him "to pay [an] additional portion of [his minor son's] expenses beyond his guideline child support obligation" which constitutes "double dipping" in that he is being required to contribute to Anson's expenses through both child support and alimony.

The trial court found that:

> [Ms. Robinson] presented an affidavit as to her monthly needs and those of the minor child. The [c]ourt finds the expenses listed . . . to be reasonable. The defendant's monthly expenses are: $1,100 for rent, $167 for electricity, $50 for heat, $17 for garbage, $100 for Cablevision, $167 for telephone, $333 for groceries, $400 for car payment, $167 for gasoline, $50 for work lunches, $25 for uninsured prescription drugs, $100 for clothing, $75 for laundry/dry cleaning, $20 for activities, $50 for entertainment and recreation, $150 for meals out, $40 for Christmas gifts, $20 for birthday gifts, $17 for life insurance, $50 for car insurance, $10 for car registration, and $45 for pets. [Her] monthly expenses for herself total $3,119.00 and for the minor child total $1,603.00. [She therefore] has a monthly shortfall of approximately $1,900.00 after deducting her net monthly income and the plaintiff's child support obligation of $935 from her monthly expenses.

The court then ordered that Mr. Robinson pay Ms. Robinson retroactive monthly alimony payments in the sum of $1,900.00 beginning in December 2006 through the date of the hearing and prospective monthly alimony payments of $1,900.00 for the ensuing eighteen years.

In making these calculations, the trial court relied upon Ms. Robinson's testimony and affidavit. The court added Anson's total monthly expenses (individual and one-third of the shared household expenses for a total of $1,603.00), the parties' emancipated adult child Amber's one-third of the shared household monthly expenses, Ms. Robinson's individual monthly expenses, and her one-third of the shared household monthly expenses ($3,119.00) before subtracting Ms. Robinson's net monthly income ($1,900.00) and Mr. Robinson's monthly child support payment ($935.00). The court then concluded

that Ms. Robinson experienced a monthly shortfall of "approximately $1,900.00." We agree with Mr. Robinson that the court was overly inclusive in calculating Ms. Robinson's expenses when it included Anson's *actual* expenses. We additionally note that the court, without explanation, included Amber's one-third of the shared household expenses. *See* N.C. Gen. Stat. § 50-16.3A(b)(7) (including as one of the sixteen, non-exclusive, relevant alimony factors: "[t]he extent to which the earning power, expenses, or financial obligations of a spouse will be affected by reason of serving as the custodian of a minor child" while making no mention of voluntary support that parents may provide adult children).

While we recognize the general rule that alimony and child support must be kept separate when the court determines the appropriate awards as to each, " 'the distinction between the two kinds of payments is easily blurred, particularly when the child for whom the support is needed resides primarily with the recipient of the alimony.' " *Fink v. Fink*, 120 N.C. App. 412, 420, 462 S.E.2d 844, 851 (1995) (quoting *Wolfburg v. Wolfburg*, 27 Conn. App. 396, 402, 606 A.2d 48, 52 (1992)), *disc. rev. denied*, 342 N.C. 654, 467 S.E.2d 710 (1996). " '[T]he question of the correct amount of alimony . . . is a question of fairness to all parties.' " *Broughton v. Broughton*, 58 N.C. App. 778, 787-88, 294 S.E.2d 772, 779 (quoting *Beall v. Beall*, 290 N.C. 669, 674, 228 S.E.2d 407, 413 (1976)), *disc. review denied*, 307 N.C. 269, 299 S.E.2d 214 (1982). As part of this fairness inquiry, all of the circumstances of the parties should be taken into consideration, including: the property, earnings, earning capacity, condition and accustomed standard of living, and child care expenses. *Fink*, 120 N.C. App. at 418, 462 S.E.2d at 849 (quoting *Peeler v. Peeler*, 7 N.C. App. 456, 461, 172 S.E.2d 915, 918 (1970)). In 1995, our legislature clarified this issue by explicitly codifying that "the extent to which the earning power, expenses, or financial obligations of a spouse *will be affected by reason of serving as the custodian of a minor child*" is one of the factors to be considered by a court when setting alimony. N.C. Gen. Stat. § 50-16.3A(b)(7) (emphasis added); *see also Hames v. Hames*, 190 N.C. App. 205, 661 S.E.2d 326 (2008) (unpublished) (noting with approval that, when setting alimony, the trial court considered the child support paid by defendant in determining plaintiff's "total monies available" to pay her expenses and the children's expenses, and deducted this same amount from defendant's available income, and considered the actual child support expenditures alleged by both parties).

However, while "the trial court . . . [must] take into account the custodial spouse's financial and care-giving obligations in determining dependency, 'fairness' unquestionably requires that the non-custodial spouse's contributions in this area also be considered." *Fink*, 120 N.C. App. at 422, 462 S.E.2d at 852. In its order, the trial court determined that Mr. Robinson's prospective child support obligation is $935.00 per month. The order states that the court arrived at this figure "based upon the incomes of the parties, the expenses of the minor child, and the Child Support Guidelines." Our review of the attached and incorporated guideline worksheets show, however, that the trial court's calculations relied exclusively upon the income of the parties and the relevant Guidelines—and did not include any consideration of Anson's actual expenses.

As Mr. Robinson's child support obligation was determined under the Guidelines, the trial court erred in making its own calculations, based upon Ms. Robinson's testimony and financial affidavit, regarding Anson's actual expenses and then using that higher calculated total ($1,603.00) to determine Ms. Robinson's monthly shortfall for purposes of calculating what alimony she was owed. *Fink*, 120 N.C. App. at 423, 462 S.E.2d at 853. Ms. Robinson may benefit from having her child care expenses considered in the court's calculation of alimony. N.C. Gen. Stat. § 50-16.3A(b)(7). However, she may not receive the benefit of a finding based in part upon her *actual* child support expenditures as she alleges them to be in her affidavit if Mr. Robinson is credited only with his Guideline proportionate share of child support expenses. *Fink*, 120 N.C. App. at 423, 462 S.E.2d at 853.

Therefore the alimony award must be vacated and remanded for a proper determination based upon Ms. Robinson's shortfall after paying only her Guideline share of Anson's expenses.

### III. Child Support

[7] Mr. Robinson next challenges the trial court's child support award. Child support is to be set in such amount "as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and the homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4(c) (2009). Trial courts have great discretion in establishing the amount of support to be provided minor children. *Rice v. Rice*, 81 N.C. App. 247, 251, 344 S.E.2d 41, 44, *disc. review denied*, 317 N.C. 706, 347 S.E.2d 439 (1986). The amount

of child support awarded will therefore not be disturbed upon appeal absent a showing of abuse of discretion. *E.g., Evans v. Evans*, 169 N.C. App. 358, 365, 610 S.E.2d 264, 270 (2005). Furthermore, an amount of child support which falls within the "guidelines is presumptively correct." *See, e.g., Beamer v. Beamer*, 169 N.C. App. 594, 599, 610 S.E.2d 220, 224 (2005). "The 'ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the [obligor] to meet the needs.' " *Cauble v. Cauble*, 133 N.C. App. 390, 394, 515 S.E.2d 708, 711 (1999) (quoting *Pittman v. Pittman*, 114 N.C. App. 808, 810, 443 S.E.2d 96, 97 (1994)).

The trial court calculated plaintiff's retroactive child support obligation, relying upon the "incomes of the parties, the expenses of the minor children and the Child Support Guidelines," and concluded that Mr. Robinson "should have paid $1,528[.00] per month to [Ms. Robinson] as child support from December 2006 through June 2007 for the support of the two minor children," "$1,017[.00] per month . . . from July 2007 through December 2008" after the oldest child turned eighteen, and "$873[.00] per month . . . beginning in January 2009 and continuing through November 2009." Thus, the court calculated that up through the date of the hearing, Mr. Robinson should have paid a total of $38,605.00 in retroactive child support.

However, "[r]etroactive child support payments are only recoverable for amounts *actually expended* on the child's behalf during the relevant period." *Rawls v. Rawls*, 94 N.C. App. 670, 675, 381 S.E.2d 179, 182 (1989) (emphasis added). Therefore, a party seeking retroactive child support must present sufficient evidence of past expenditures made on behalf of the child, and evidence that such expenditures were reasonably necessary. *Savani v. Savani*, 102 N.C. App. 496, 501, 403 S.E.2d 900, 903 (1991). In this case, the order contained no findings as to the actual expenditures made for the benefit of the minor children during the time period for which retroactive support was sought. Therefore, we must reverse the order awarding retroactive child support and remand the issue to the trial court for further findings and a proper award.

[8] Turning to Mr. Robinson's prospective child support obligation, the court concluded that Mr. Robinson should pay $935.00 per month for the support of Anson beginning in December 2009. Mr. Robinson contends the trial court erred by finding that he "earns an income, including personal expenses paid by the company, of approximately

$90,000.00 per year." He alleges that this finding of fact is not supported by the evidence.

The court had before it Mr. Robinson's 2008 tax filing which showed that in 2008 he made $68,180.00 after deducting his alimony payment of $21,216.00. Thus, his 2008 pre-alimony income was $89,936.00 ($68,180.00 + $21,216.00). Additionally, Mr. Robinson's company's 2009 profit and loss statements showed that his gross revenue was $181,272.00. Ms. Robinson provided testimony to the effect that after including a number of personal expenses which Mr. Robinson paid for with his business account—including lease, maintenance, and tax payments on his vehicle, fuel, meals, entertainment, rent, groceries, and cash advances—his compensation for 2009 was $90,000.00. We conclude, therefore, that Mr. Robinson's challenge to the court's finding that he made approximately $90,000.00 per year and his resulting challenge to the prospective child support award is without merit.

## IV. Post-Separation Marital Debt Payments

[9] Mr. Robinson also contends the trial court erred in its calculation of payments he had already made towards his alimony and child support obligations. Specifically, he challenges the court's finding that mortgage and car payments were payments towards marital debt to be included in the equitable distribution of the parties' debts and assets. The court found that:

> The parties have each made post-separation payments on marital debt for which they should be given credit. [Mr. Robinson] paid $10,297[.00] in 2008 and $16,421.11 in 2009 for items such as [Ms. Robinson's] car payment, the children's and her automobile insurance, the daughter's car payments, and home repairs and mortgage payments on the former marital residence, totaling $26,718.00. [Ms. Robinson] paid $1,102.38 in 2006, $13,665.40 in 2007, $13,528.36 in 2008, and $1,497.29 in 2009 for items such as the daughter's car payments and repairs, home repairs, boat loan and storage, [Mr. Robinson's] health insurance, and the children's car insurance, totaling $29,793.43. Each party should have paid one-half of such expenses. As a result, [Ms. Robinson] should have and recover [sic] of [Mr. Robinson] the sum of $1,537.72 for her overpayment of her share of such expenses.

The court also concluded:

> [Mr. Robinson] has provided some support to [Ms. Robinson]
> since the date of separation. [He] made direct payments to [her]
> in the sum of $4,500.00 in 2006, $39,000.00 in 2007, $22,200.00 in
> 2008, and $12,900.00 in 2009, for a total of $78,600.00.

> [These] payments should be applied first to alimony, and then to
> child support. . . . [His] total alimony obligation from the date of
> separation is $68,400[.00] ($1,900[.00] x 36). After applying the
> amount the plaintiff has paid to date directly to the defendant of
> $78,600[.00] [sic] to the total amount of the alimony arrears of
> $68,400[.00] and the total amount of child support arrears of
> $38,605.00, [Mr. Robinson] has child support arrears of
> $28,405.00.

Mr. Robinson argues that the car and mortgage payments he made in
2008 and 2009 should have been credited towards his retroactive
alimony obligation rather than included as part of the equitable
distribution of the parties' debts, so that the direct payments he made
to Ms. Robinson totaled more than the $78,600.00 the trial court
credited him with having paid:

The merits of this allegation rest upon whether the car and mort-
gage payments were correctly classified as payments towards marital
debt to be included in the equitable distribution or whether they were
payments made to Ms. Robinson for her personal expenses or to
make payments on her separate property. As we have noted, there
were no specific findings as to whether the marital residence was
separate or marital property, and the trial court improperly relied
upon the invalid "stipulation" with respect to the parties' vehicles.
Until these debts are properly classified, valued, and distributed by
the court upon remand, we cannot determine whether the court
should have allocated those payments towards Mr. Robinson's
alimony and child support obligations, or included them within its
equitable distribution order.

## V. Visitation

[10] Mr. Robinson also challenges the trial court's order setting his
child custody visitation schedule for Anson. We decline to address
this issue because it is now moot. The visitation schedule applied
only through calendar year 2010. Anson reached the age of majority
on 11 December 2010, and can no longer be subject to any visitation
agreement between his parents. Therefore, any ruling that this Court

might make regarding the issue would be entirely academic. *See Woncik v. Woncik*, 82 N.C. App. 244, 249, 346 S.E.2d 277, 280 (1986) (holding that an appeal from an order terminating visitation privileges pending a hearing was moot because the hearing had been held and privileges restored); *Smithwick v. Frame*, 62 N.C. App. 387, 391, 303 S.E.2d 217, 220 (1983) (declining to review a temporary custody order rendered moot by entry of a permanent custody order).

## VI. Attorney's Fees

[11] Finally, Mr. Robinson challenges the trial court's award of Ms. Robinson's attorney's fees. The court found:

> [Ms. Robinson] is an interested party, who filed this action in good faith, and is unable to defray the expense of litigation. [Mr. Robinson] has failed to pay child support in an adequate amount, taking into account the financial circumstances of the parties. [Ms. Robinson] is entitled to an award of attorney's fees. The fees and expenses incurred by the defendant are reasonable in light of the skill of the attorney and the complexity of the issues before the [c]ourt and [Mr. Robinson] should pay those fees and expenses to counsel for [Ms. Robinson].

Mr. Robinson challenges that there is no statutory authority for awarding attorney's fees for the equitable distribution portion of the case and that the affidavit of attorney's fees does not differentiate work related to the parties' claims for equitable distribution from legal work related to claims for child support and alimony. We agree.

A party can recover attorney's fees only if " 'such a recovery is expressly authorized by statute.' " *McGinnis Point Owners Ass'n v. Joyner*, 135 N.C. App. 752, 756, 522 S.E.2d 317, 320 (1999) (quoting *Stillwell Enters., Inc. v. Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980)). Here, the trial court considered three substantive issues: the equitable distribution of the parties' property and debts, the award of child support, and the award of alimony.

Following the determination of child custody actions, the trial court is permitted to award attorney's fees among the parties according to N.C.G.S. § 50-13.6:

> [T]he court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit. Before ordering payment of a fee in a support action, the court must find as a fact

**ROBINSON v. ROBINSON**

[210 N.C. App. 319 (2011)]

that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding.

N.C. Gen. Stat. § 50-13.6 (2009). Attorney's fees may also be awarded "[a]t any time that a dependent spouse would be entitled to alimony pursuant to G.S. 50-16.3A . . . to be paid and secured by the supporting spouse in the same manner as alimony." N.C. Gen. Stat. § 50-16.4 (2009).

Attorney's fees, however, are not recoverable in actions for equitable distribution. *E.g., Hartsell v. Hartsell*, 99 N.C. App. 380, 390, 393 S.E.2d 570, 576 (1990), *aff'd*, 328 N.C. 729, 403 S.E.2d 307 (1991); *Holder*, 87 N.C. App. at 583-84, 361 S.E.2d at 894-95; *Patterson v. Patterson*, 81 N.C. App. 255, 262, 343 S.E.2d 595, 600 (1986). Because this is a combined action for equitable distribution, alimony, and child support, the trial court's findings should have reflected that the fees awarded are attributable only to fees which Ms. Robinson incurred with respect to the alimony and/or child support actions. *See Patterson*, 81 N.C. App. at 262, 343 S.E.2d at 600. In the absence of findings or conclusions indicating to what facet or facets of this case the fee award is attributable, we are unable to determine whether the trial court erred by awarding fees for equitable distribution.

In addition, even when awarding attorney's fees in matters involving child support and alimony, the trial court does not possess "unbridled discretion; it must still make findings of fact to support its award." *Burr v. Burr*, 153 N.C. App. 504, 506, 570 S.E.2d 222, 224 (2002) (citing *Hudson v. Hudson*, 299 N.C. 465, 471, 263 S.E.2d 719, 723 (1980)). In its order awarding attorney's fees, the court must include findings as to the basis of the award, including: the nature and scope of the legal services, the skill and time required, and the relationship between the fees customary in such a case and those requested. *See, e.g., id.; Coleman v. Coleman*, 74 N.C. App. 494, 499, 328 S.E.2d 871, 874 (1985). Once these "statutory requirements have been met, the amount of attorney's fees to be awarded rests within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion." *Burr*, 153 N.C. App. at 506, 570 S.E.2d at 224 (citing *Hudson*, 299 N.C. at 472, 263 S.E.2d at 724).

In this case, it is apparent, and Mr. Robinson has not challenged, that Ms. Robinson is entitled to attorney's fees for the legal costs of pursuing her claim for alimony. He does challenge, however, her entitlement to attorney's fees for her claim for child support. He

contends that had the trial court properly calculated his retroactive child support obligation and properly credited his post-separation payments, the amount of child support which he paid would have been adequate and he would owe no arrearage. Until the issues of retroactive child support and classification, valuation, and distribution of the marital assets and liabilities have been properly determined upon remand, we cannot determine whether Mr. Robinson provided, or failed to provide, adequate child support. Thus, we must vacate the award of attorney's fees, and remand the issue for a new award based on appropriate findings of fact.

In summary, we affirm the order providing for Anson's child support from December 2009 until he reached the age of majority. The balance of the trial court's order is vacated and remanded for a determination with respect to equitable distribution of the parties' property, a proper award of alimony, determination of plaintiff's obligation for retroactive child support, if any, and attorney's fees.

Affirmed in part, Vacated in part, and Remanded.

Judges McGEE and ERVIN concur.