IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-200

No. COA20-827

Filed 5 April 2022

Mecklenburg County, No. 18-CVD-937

JOLIN BRADY, Plaintiff,

v.

ERRON BRADY, Defendant.

Appeal by Defendant from order entered 20 May 2020 by Judge Paulina Havelka in Mecklenburg County District Court. Heard in the Court of Appeals 22 September 2021.

*Sodoma Law, by Amy E. Simpson, and Hamilton Stephens Steele and Martin, PLLC, by Kyle W. LeBlanc, for Plaintiff-Appellee.*

*Myers Law Firm, PLLC, by Matthew R. Myers, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1 Defendant appeals the trial court's Order for Alimony and Child Support, Equitable Distribution Judgment, and Order Denying Contempt ("Order"). Defendant argues that there are various deficiencies in the findings of fact and conclusions of law regarding the alimony award and equitable distribution. We discern merit in Defendant's challenge to the sufficiency of the findings of fact to support the amount of alimony awarded. We discern no merit in his remaining

arguments. We vacate the alimony award and remand for further findings of fact and conclusions of law supported by those findings. We affirm the remainder of the Order.

## I.    Background

¶ 2        Plaintiff Jolin Brady and Defendant Erron Brady were married 26 April 1997, separated 11 June 2017, and divorced 26 September 2018. They are the parents of four children: a son born on 21 January 2002 and triplets born on 18 July 2005. Defendant was in undergraduate school at Brigham Young University when the parties married. The parties moved to Kentucky where Defendant went to dental school at the University of Kentucky. While Defendant was in dental school, Plaintiff worked as a paralegal and then stopped working when the parties' eldest son was born. The parties moved to Charlotte, North Carolina, in 2002 after Defendant finished dental school. Defendant worked for several dental offices in the Charlotte area until opening his own dental practice on 2 May 2005, two months before the birth of the parties' triplets.

¶ 3        Defendant is the sole owner of the dental practice, Erron S. Brady, DMD, PA ("Brady Family & Cosmetic Dentistry"). Defendant owns the office suite in which the dental practice is located through an LLC, Erron Brady Properties, LLC. The dental practice pays rent for the office suite to the LLC. In 2014, Plaintiff began working part-time as a yoga instructor.

¶ 4　　Plaintiff commenced this action by filing a complaint for equitable distribution on 12 January 2018 under file number 18-CVD-937. Defendant filed an answer and counterclaim for equitable distribution on 19 February 2018. Plaintiff filed a complaint for child custody, child support, postseparation support, alimony, motion for physical and mental examination, appointment of expert, interim distribution, appointment for business evaluation, and attorney fees on 21 February 2018 under file number 18-CVD-3737. Defendant filed an answer and counterclaim for custody in 18-CVD-3737 on 4 May 2018. A consent order to consolidate the two pending actions into file number 18-CVD-937 was entered. Plaintiff filed a reply to Defendant's counterclaim for custody on 5 July 2018. A consent order for child custody was entered 4 June 2019.

¶ 5　　A trial was held on 19 September 2019, 20 September 2019, and 15 October 2019 on contempt, equitable distribution, child support, alimony, and limited custody issues. At the start of the trial on 19 September 2019, the trial court entered a final pre-trial order which contained the contentions of the parties as to the various items of property to be distributed by the trial court. The parties ultimately agreed to the distribution of household goods. The agreement assigned a value of $23,000.00 in the equitable distribution to Plaintiff for the household goods, and a consent order regarding household goods was entered 18 December 2019.

¶ 6　　In the final pre-trial order, the parties agreed on the distribution of most

assets, with Plaintiff receiving $537,732.04 and Defendant receiving $587,049.68 of the agreed-upon assets. Four items were left for a determination by the trial court: (1) the valuation of Defendant's dental practice; (2) whether a Bank of America savings account ending in 3803 with $4,804.82 should be treated as Defendant's personal asset or part of his dental practice; (3) whether a Bank of America checking account ending in 0148 with $33,000.01 should be treated as Defendant's personal asset or part of his dental practice; and (4) how to distribute a checking account ending in 0293 in the amount of $8,738.68.

¶ 7 Plaintiff contended the value of the dental practice was $520,000 and Defendant contended the value of the practice was $400,000. Both sides presented experts at the trial on the value of the business. The total marital estate outlined in the final pre-trial order was $1,690,607.90, based on Plaintiff's figures, or $1,570,607.90, based on Defendant's figures. Once the agreed-upon $23,000.00 for household goods was added in, the total marital estate was $1,713,607.90, based on Plaintiff's figures, or $1,593,607.90 based on Defendant's figures.

¶ 8 The trial court entered its Order on 20 May 2020. The Order found the total marital estate to be $1,713,605 and distributed 54% of the estate to Plaintiff. The Order requires Defendant to refinance the office suite and cash out the equity to make a distributive award payment to Plaintiff of $364,000. The Order found Defendant's net monthly income to be $10,922.01, ordered him to pay alimony of $5,250 per month

for 10 years from October 2019, and ordered child support of $3,483.83 per month.

¶ 9    Defendant timely appealed.

## II.    Discussion

### A. Amount and Duration of Alimony

¶ 10    Defendant first argues that the trial court erred in setting the amount and duration of alimony.

¶ 11    The amount of alimony is determined by the trial judge in the exercise of his sound discretion and is reviewed on appeal only for an abuse of discretion. *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982) (citation omitted).

> In determining the amount of alimony[,] the trial judge must follow the requirements of the applicable statutes. Consideration must be given to the needs of the dependent spouse, but the estates and earnings of both spouses must be considered. "It is a question of fairness and justice to all parties."

*Id.* (quoting *Beall v. Beall*, 290 N.C. 669, 674, 228 S.E.2d 407, 410 (1976)).

> A trial court's award of alimony is addressed in N.C. Gen. Stat. § 50-16.3A . . . , which provides in pertinent part that in "determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors" including, inter alia, the following: marital misconduct of either spouse; the relative earnings and earning capacities of the spouses; the ages of the spouses; the amount and sources of earned and unearned income of both spouses; the duration of the marriage; the extent to which the earning power, expenses, or financial obligations of a spouse are affected by the spouse's serving as custodian of a minor child; the standard of living of the spouses

during the marriage; the assets, liabilities, and debt service requirements of the spouses, including legal obligations of support; and the relative needs of the spouses.

*Hartsell v. Hartsell*, 189 N.C. App. 65, 69, 657 S.E.2d 724, 727 (2008) (reciting factors listed in N.C. Gen. Stat. § 50-16.3A(b)).  In its order, "the court shall set forth . . . the reasons for its amount, duration, and manner of payment [and] . . . shall make a specific finding of fact on each of the factors in [N.C. Gen. Stat. § 50-16.3A(b)] if evidence is offered on that factor."  N.C. Gen. Stat. § 50-16.3A(c) (2019).

> Unless the supporting spouse is deliberately depressing his or her income or indulging in excessive spending because of a disregard of the marital obligation to provide support for the dependent spouse, the ability of the supporting spouse to pay is ordinarily determined by his or her income at the time the award is made.  If the supporting spouse is deliberately depressing income or engaged in excessive spending, then capacity to earn, instead of actual income, may be the basis of the award.

*Quick*, 305 N.C. at 453, 290 S.E.2d at 658 (citations omitted).

¶ 12        The trial court in this case made the following findings of fact relevant to the amount and duration of the alimony award:

> 1. The parties were married on April 26, 1997, legally separated on June 11, 2017 ("DOS") and were divorced on September 26, 2018.
>
> . . . .
>
> 6. Plaintiff/Mother and Defendant/Father were both raised in the Mormon religion.  Due to Defendant/Father's affairs, he has been excommunicated from the Mormon church two

(2) times and is currently excommunicated. . . .

7. Plaintiff/Mother was a stay at home mother for the majority of the parties' marriage. Plaintiff/Mother worked full time while Defendant/Father finished his last year at BYU through the first 3.5 years of dental school. Once the parties had their first child, Plaintiff/Mother stopped working and focused her efforts on raising a family. In 2005, the parties had triplets and Plaintiff/Mother continued in her role as a stay-at-home parent. This allowed Defendant/Father to focus on working full days, earning substantial money, and advancing his career.

8. Defendant/Father is a self-employed dentist who works for a practice known as Brady Family and Cosmetic Dentistry. . . .

9. Defendant/Father's gross salary is approximately $18,364.42 per month.

10. Defendant/Father is able to access his dental practice funds when he needs and/or wants the money. He bought a $25,000 dining room table and chairs from the business account when he wanted it, he spent over $10,000 flying first class and staying at the Ritz Carlton (with surf lessons, valet service, meals, etc.) because he wanted a "write off"; he spent over $9,000 in just over 2 months on guns and gun related paraphernalia; he has spent over $13,000 traveling to see his new wife in foreign locations, etc.; he spent over $6,300 in 4 months in 2018 traveling to Utah; he spent over $5,600 taking the children on vacation in 2017 (and upgrading their flight to first class). In fact, he was able to afford to take 15 trips within 2 years and 3 months.

. . . .

13. Defendant/Father and Plaintiff/Mother are both of good health and have the ability to continue working for the foreseeable future. No evidence was presented to indicate

that Defendant/Father will not continue to earn the same income, if not more, than he is currently making.

14. Plaintiff/Mother has plans to go back to school to obtain her degree following the youngest children graduating from high school.

. . . .

16. Plaintiff/Mother is primarily a stay-at-home parent for the minor children and has been for many years. She works part-time as a yoga instructor but derives very little income from said employment. Her gross income at the time of trial was $564.17 as stated in her verified Affidavit of Financial Standing filed herein.

17. Although Plaintiff/Mother's income has decreased during since the date of separation, Plaintiff/Mother has not acted in bad faith. She is not underemployed nor is she intentionally suppressing her income to skirt her family support responsibilities.

. . . .

22. Plaintiff/Mother's monthly reasonable needs and expenses are $5,400.00.

23. Defendant/Father's monthly expenses as listed on his filed Affidavit of Financial Standing were not reasonable.

24. Defendant/Father's net monthly income is $10,922.01.

25. Defendant/Father's net income exceeds his reasonable needs and expense resulting in him having a monthly surplus of $5,250.00. He has the ability to pay $5,250.00 per month in spousal support.

26. Based on the respective incomes of the parties and their relative reasonable needs and expenses, Plaintiff/Mother is a dependent spouse who is actually substantially dependent upon Defendant/Father and Defendant/Father

is the supporting spouse.

. . . .

28. Defendant/Father engaged in the following marital misconduct pursuant to N.C. Gen. Stat. § 50-16.3A: He lied to Plaintiff/Mother.

> a. He engaged in illicit sexual conduct with at least 4 women during his marriage.

30. Plaintiff/Mother has not engaged in marital misconduct pursuant to N.C. Gen. Stat. § 50-16.3A.

31. Defendant/Father's earnings capacity exceed that of Plaintiff/Mother's.

. . . .

33. When Plaintiff/Mother Jolin is not working, she is caring for the parties' 4 children from the time they get up for school until the[y] go to sleep.

. . . .

35. The parties entered into a Consent Order for Custody on June 4, 2019 establishing the physical custody arrangement of the parties' minor children. Pursuant to that Order, Plaintiff/Mother was given primary physical custody. . . .

. . . .

43. The amount of child support pursuant to Worksheet A of the Child Support Guidelines is $3,483.83 and the reasonable needs of the children do not exceed the Guideline amount.

. . . .

52. The total net value of the marital and divisible property

is $1,713,605.00 . . . .

. . . .

56. . . . Plaintiff/Mother is distributed marital and divisible assets and debts having a net value of $560,732.00, while Defendant/Father is distributed marital and divisible assets and debts having a net value of $1,152,874.00. In addition, Defendant/Father owes a distributive award to Plaintiff/Mother of $364,000.00. This results in Plaintiff/Mother's share being 54% of the total net marital and divisible estate compared to Defendant/Father's 46% share. The Court finds this unequal distribution to be equitable in light of the distributional factors as set forth above.

Based upon these findings, the trial court concluded, in relevant part, as follows:

3. The provisions below are fair, reasonable, adequate, and necessary and the parties are capable of complying with them.

. . . .

17. Husband is the supporting spouse as defined in N.C.G.S. § 16.1A.

18. Wife is a dependent spouse as defined in N.C.G.S. 16.1A.

19. Husband had the ability to pay such spousal support as set forth herein.

20. After considering all the relevant factors upon which evidence was presented, Plaintiff /Mother is entitled to the sum of $5,250.00 per month in alimony for a period of ten (10) years (120 months).

Defendant argues that findings of fact 10, 22, 23, 25 and 26 are not supported by competent evidence. The remaining, unchallenged findings of fact are thus

binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). While we determine from our review of the record that findings of fact 10, 22, 23, and 26 are supported by competent evidence, we agree that finding of fact 25 lacks evidentiary support in the record.

¶ 14　　　Based on the trial court's unchallenged findings, Defendant's gross monthly salary was approximately $18,364.42 and his net monthly income was approximately $10,922.01. The trial court found Plaintiff's reasonable monthly needs and expenses to be $5,400.00. Although the trial court found that Defendant's monthly expenses as listed on his filed Affidavit of Financial Standing—which totaled $11,974.43—were not reasonable, the trial court did not make a finding of fact as to what his reasonable monthly needs and expenses were.

¶ 15　　　It could be inferred from the finding that "Defendant/Father's net income exceeds his reasonable needs and expense[s] resulting in him having a monthly surplus of $5,250.00," that the trial court determined that his monthly reasonable needs and expenses were $5,672.01.[1] However, the trial court made no such finding. Additionally, although the trial court found Defendant "has the ability to pay $5,250.00 per month in spousal support," it does not appear that the trial court considered Defendant's monthly child support obligation of $3,483.83 when making

---

[1] $10,922.01 − $5,250 = $5,672.01

this finding. If Defendant's net monthly income is approximately $10,922.01, monthly reasonable needs and expenses are $5,672.01, and monthly child support obligation is $3,483.83, Defendant's monthly surplus is $1,766.17. Thus, the finding that he has the ability to pay $5,250.00 per month in spousal support is not supported by the findings of fact.

The trial court found that Defendant "is able to access his dental practice funds when he needs and/or wants the money" and this finding is supported by the evidence. However, it is unclear from the findings of fact if, and if so to what extent, the trial court considered Defendant's access his dental practice funds when determining Defendant's ability to pay $5,250 per month in spousal support.

The unchallenged findings of fact, together with the findings of fact that are supported by the evidence, support the trial court's conclusion that Plaintiff is entitled to alimony for a period of ten years. However, because the findings of fact are insufficient to support the conclusion that Defendant has the ability to pay $5,250.00 in monthly alimony, we vacate the order as to alimony and remand for further findings of fact and conclusions of law based on those findings.

## B. Equitable Distribution

Defendant next challenges the equitable distribution on several bases.

We review a trial court's order for equitable distribution for abuse of discretion. *Robinson v. Robinson*, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011). N.C. Gen.

Stat. § 50-20(j) "mandates that written findings of fact be made in any order for the equitable distribution of marital property made pursuant to" N.C. Gen. Stat. § 50-20. *Armstrong v. Armstrong*, 322 N.C. 396, 403, 368 S.E.2d 595, 599 (1988) (emphasis omitted). "The purpose for the requirement of specific findings of fact that support the court's conclusion of law is to permit the appellate court on review 'to determine from the record whether the judgment-and the legal conclusions that underlie it-represent a correct application of the law.'" *Patton v. Patton*, 318 N.C. 404, 406, 348 S.E.2d 593, 595 (1986) (quoting *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980)). "When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Dechkovskaia v. Dechkovskaia*, 232 N.C. App. 350, 356, 754 S.E.2d 831, 836 (2014) (quoting *Kelly v. Kelly*, 228 N.C. App. 600, 601, 747 S.E.2d 268, 272 (2013)). The trial court's "findings of fact are conclusive if they are supported by any competent evidence from the record." *Robinson*, 210 N.C. App. at 322, 707 S.E.2d at 789.

### 1. *Distributive Award*

¶ 20    Defendant argues that the trial court erred in awarding a distributive award. Specifically, Defendant argues that the trial court erred by failing to allow Defendant to transfer to Plaintiff two Individual Retirement Accounts ("IRAs") that were distributed to Defendant to offset the distributive award.

¶ 21      "Subject to the presumption of subsection (c) of [N.C. Gen. Stat. § 50-20] that an equal division is equitable, it shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable." N.C. Gen. Stat. § 50-20(e) (2019). "In any action in which the presumption is rebutted, the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties." *Id.*

¶ 22      "[I]n equitable distribution cases, if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination." *Urciolo v. Urciolo*, 166 N.C. App. 504, 507, 601 S.E.2d 905, 908 (2004) (quotation marks and citation omitted). "Further, N.C. Gen. Stat. § 50-20(c) enumerates distributional factors to be considered by the trial court." *Id.* "One of those factors is '[t]he liquid or nonliquid character of all marital property and divisible property.'" *Id.* (quoting N.C. Gen. Stat. § 50-20(c)(9)). "The trial court is required to make findings as to whether the defendant has sufficient liquid assets from which he can make the distributive award payment." *Id.* (citing *Embler v. Embler*, 159 N.C. App. 186, 188-89, 582 S.E.2d 628, 630 (2003)).

¶ 23      Here, the trial court found and concluded that an unequal distribution was equitable and ordered Defendant to pay Plaintiff a distributive award of $364,000. The trial court also made the following relevant findings of fact:

54. Given two of the three main assets (the dental office suite and the dental practice) must be distributed to Defendant/Father, an in-kind distribution is not feasible. The dental practice is a business entity that cannot be shared by the parties and Defendant/Father needs the dental office suite in order to operate his dental practice. As such, the court finds that a distributive award is necessary to achieve equity between the parties.

. . . .

57. Further, given the amount of equity in the dental suite, the Court finds that Defendant/Father accomplish the distributive award in a lump sum payment by refinancing the dental suite.

The trial court made the following relevant conclusions of law:

7. The Court has considered all distributional factors raised by the evidence.

8. It is equitable for each party to be distributed the items of marital and divisible property and debt which are distributed to that party by this ED Judgment. An unequal division of the marital and divisible property and debt in Plaintiff/Mother's favor as set forth herein is equitable.

9. An in-kind distribution is impractical given the dental practice and property needed to run the dental practice. The most equitable way to distribute this asset is by Defendant/Father refinancing the dental suite and providing a distributive award from Defendant/Father to Plaintiff/Mother.

¶ 24    The trial court made the requisite findings of fact and conclusions of law to support a determination that the presumption of an in-kind distribution had been rebutted. The record contains evidence that neither Defendant's dental practice,

which was a closely held corporation, nor the dental suite was susceptible to division. Such evidence supports the finding that the in-kind presumption was rebutted. *See Fountain v. Fountain*, 148 N.C. App. 329, 339, 559 S.E.2d 25, 33 (2002) ("When . . . the property is an interest in a closely held corporation, this in-kind presumption may be rebutted." (citation omitted)). Moreover, the $520,000 value of the dental practice, as found by the trial court, plus the $384,495 equity in the dental suite, as stipulated to by the parties, comprised a bulk of the $1,152,874 distributed to Defendant. The remaining value of the assets distributed to Defendant, including Defendant's two IRAs worth a combined value of $195,683.34, was $248,372, short of the $364,000 distributive award ordered. The evidence supports the trial court's finding and conclusion that Defendant refinance the dental suite to fund the distributive award.

¶ 25    Defendant also argues that the trial court erred by ordering him to refinance the mortgage when there was no evidence that he would be able to do so.

¶ 26    The trial court made the following relevant findings of fact:

> 8. Defendant/Father is a self-employed dentist who works for a practice known as Brady Family and Cosmetic Dentistry. The practice was created during the marriage of the parties and prior to their separation. The practice operates out of an office suite located at 11030 Golf Links Drive, Unit 201, Charlotte, North Carolina 28277 (hereinafter the "Suite"). The Suite is owned by a limited liability corporation called Erron Brady Properties LLC. Erron Brady Properties LLC was created during the

marriage and in existence on the date of separation. The LLC purchased the Suite during the marriage and prior to the parties' date of separation.

. . . .

10. Defendant/Father is able to access his dental practice funds when he needs and/ or wants the money. . . .

11. Defendant/Father took out a loan after the DOS for the purpose of expanding the dental office to allow him to hire another dentist and he has done so. . . .

12. Defendant/Father did not knowingly lie to the Court about taking out a signature loan to renovate the dental suite. . . .

. . . .

46. The parties filed a signed Final Pretrial Order whereby they stipulated to the classification, valuation and distribution of the majority of their property acquired during the marriage.

. . . .

51. The parties stipulated to the classification, valuation, and distribution of the remainder of the marital property. The court incorporates herein the attached Asset and Debt Spreadsheet marked as [Schedule] "A."

¶ 27    In Schedule A, the parties agreed that the dental suite had a value of $675,000 with a corresponding loan of $290,504.78, and that both the suite and the loan would be distributed to Defendant. The findings of fact show that Defendant had sufficient ownership, control, and equity interest in the suite to allow him to refinance the suite.

These findings of fact supported the trial court's finding and conclusion that Defendant refinance the office suite to fund the distributive award.

### 2. *Distribution of Bank Accounts*

¶ 28     Defendant argues that the trial court erred by distributing certain bank accounts to Defendant as personal property rather than including those accounts in the value of his dental practice.

¶ 29     The trial court found the following:

> 49. The parties stipulate that the Bank of America Checking Account #[0148] and Savings Account #3803 are marital property and that they should be distributed to Defendant/Father.  Plaintiff/Mother contended the funds should be distributed to Defendant/Father. Defendant/Father contended the funds were related to the businesses and should be included in the business values.
>
> 50. The Court finds that the Bank of America Checking Account #[0148] had a value of $33,000[.]01 on the date of separation and the Bank of America Savings Account #3803 had a value of $4,984.82 on the date of separation.

¶ 30     At trial, the following colloquy took place between Plaintiff's attorney and Plaintiff's expert, Victoria Coble, about the accounts in question:

> [Q.]  What do you recall about whether or not these two particular accounts were actually considered by you in valuing this practice as of the date of separation?
>
> A.  So we picked-up -- if you go to Page 22, the very top, what we have included in the business valuation is the checking account for the business, which was the Bank of America account ending in, 9013.  These we did look at, information was given to us on them.  They do relate to a

business, but it's the rental business and so, for sure, we
did include them in this valuation.

Q. Okay.

A. We only picked-up the, 9013.

Q. And the rental business is the ownership of the suite
for which Dr. Brady pays rent to the LLC that owns the
rental property, which is also owned by him.

A. Yeah, but its outside of this. This is just the operations.

Page 22 of Coble's report states the following: "As of May 31, 2017, the balance sheet

reported total cash of $26,641. The balance in the Company's Bank of America

checking account 9013 was $27,061 as of June 11, 2017." This evidence supports a

conclusion that the bank accounts at issue were not included in Coble's valuation of

Defendant's dental practice and was sufficient to support the trial court's decision to

exclude the accounts from the value of the dental practice and instead to distribute

them to Defendant as personal property.

### 3. *Unequal Division of Property*

¶ 31        Defendant argues that the trial court erred in ordering an unequal distribution

of marital property where the order failed to make sufficient findings to support an

unequal distribution. Specifically, Defendant argues that that the trial court's

findings are insufficient because "the trial court's order does not make specific

[f]indings setting forth how the court weighed the factors." However, "[i]t is within

the trial court's discretion to determine the weight attributed to any of the N.C. Gen.

Stat. § 50-20(c) factors on which evidence was presented" and "[i]t is not required that the trial court make findings revealing the exact weight assigned to any given factor." *Finkel v. Finkel*, 162 N.C. App. 344, 349, 590 S.E.2d 472, 476 (2004) (quotation marks and citations omitted).  Defendant's argument is without merit.

### III.    Conclusion

We vacate the alimony award and remand for further findings of fact and conclusions of law supported by those findings.  We affirm the remainder of the Order.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

Judge DILLON and Judge WOOD concur.