IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-703

 No. COA21-68

 Filed 21 December 2021

 Johnston County, No. 17 CVD 3894

 SALLYCETA WADSWORTH, Plaintiff,

 v.

 KEITH WADSWORTH, Defendant.

 Appeal by Defendant from order entered on 6 July 2020 by Judge Jim Love,

 Jr., in Johnston County District Court. Heard in the Court of Appeals 5 October 2021.

 Mary McCullers Reece for the Plaintiff-Appellee.

 Tiffanie C. Meyers for the Defendant-Appellant.

 JACKSON, Judge.

¶1 Keith Wadsworth (“Defendant”) appeals from the trial court’s order on

 equitable distribution, alimony, and child support. We affirm in part, vacate in part,

 and remand the case to the trial court for entry of an award of attorney’s fees that

 does not include fees for equitable distribution.

 I. Background

¶2 The parties met in Bridgeport, Connecticut, and were married on 28 July 2001.

 Defendant had one child from a prior relationship at the time. Sallyceta Wadsworth

 (“Plaintiff”) was aware of Defendant’s eldest child before the parties were married.
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

¶3 In 2004, after the birth of their first child, the parties moved to North Carolina.

 Defendant accepted a position as a contract negotiator at Aetna Healthcare and

 Plaintiff worked part-time as a self-employed hairstylist while raising their child. In

 2009, a second child was born to the marriage.

¶4 Sometime in 2009, a deputy sheriff served Defendant at the marital home with

 a lawsuit for child support. Defendant told Plaintiff that the lawsuit was related to

 his oldest child, and she believed him.

¶5 In 2011, Plaintiff became pregnant again. Not long afterward, Plaintiff found

 a VHS tape in the marital home that contained a recording of Defendant engaging in

 sexual intercourse with another woman. The recording bore a date during the parties’

 marriage. Plaintiff confronted Defendant about the tape, and he did not deny he was

 in it.

¶6 Plaintiff then found the court papers Defendant had been served with in 2009

 and learned that the lawsuit was not related to Defendant’s eldest child, but instead

 was related to child support for two children Defendant had with another woman

 during the parties’ marriage.

¶7 Plaintiff gave birth to the third child of the marriage in November 2011. At

 the time, Defendant was traveling frequently. He told Plaintiff that the trips were

 work-related, but bank and credit-card statements showed that the trips included

 destinations such as Daytona Beach, San Juan, Myrtle Beach, and the Mohegan Sun,
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 a casino in Connecticut.

¶8 Defendant moved out of the marital residence on 14 April 2013 but continued

 paying for the mortgage and utilities and contributed towards the cost of groceries,

 clothing, and shoes for some time. These contributions decreased over time.

¶9 Defendant had a third child with another woman while still married to

 Plaintiff in August 2017.

¶ 10 Plaintiff initiated this action on 13 December 2017 in Johnston County District

 Court. The matter came on for trial before the Honorable Jim Love, Jr., on 27 June

 2019. Judge Love presided over a three-day bench trial. The court entered an order

 on 6 July 2020 ordering Defendant to pay Plaintiff past-due and prospective child

 support, alimony, and awarding Plaintiff attorney’s fees. The court ordered

 Defendant to maintain life insurance to secure his alimony and child support

 obligations.

¶ 11 Defendant entered timely written notice of appeal from the trial court’s order

 on 4 August 2020.

 II. Analysis

¶ 12 Defendant makes essentially five arguments on appeal. We address each in

 turn.

 A. Standard of Review

¶ 13 “It is well established that child support orders entered by a trial court are
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 accorded substantial deference by appellate courts[.]” Sergeef v. Sergeef, 250 N.C.

 App. 404, 406, 792 S.E.2d 192, 193 (2016) (internal marks and citation omitted). This

 deference “is based upon the trial courts’ opportunity to see the parties; to hear the

 witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed

 record read months later by appellate judges[.]” Shipman v. Shipman, 357 N.C. 471,

 474, 586 S.E.2d 250, 253 (2003) (internal marks and citation omitted). Our review is

 thus limited to “whether there is sufficient competent evidence to support the findings

 of fact, and whether, based on these findings, the Court properly computed the child

 support obligations.” Miller v. Miller, 153 N.C. App. 40, 47, 568 S.E.2d 914, 918-19

 (2002) (citation omitted). “Accordingly, should we conclude that there is substantial

 evidence in the record to support the trial court’s findings of fact, such findings are

 conclusive on appeal, even if record evidence might sustain findings to the contrary.”

 Shipman, 357 N.C. at 475, 586 S.E.2d at 253-54 (internal marks and citation

 omitted).

 B. Challenged Factual Findings

¶ 14 Defendant’s first three arguments on appeal challenge the trial court’s findings

 of fact. Defendant argues that the trial court erred in calculating his child support

 obligation based on work-related childcare of $600 per month; that the trial court

 erred in calculating extraordinary expenses based on insufficient evidence; and that

 the trial court erred in calculating his child support arrears based on insufficient
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 evidence. We disagree with all three contentions.

 1. Finding of Fact 42

¶ 15 Defendant challenges the evidentiary support for the trial court’s finding that

 the reasonable work-related childcare costs of the parties were $600 per month. We

 hold that this finding was supported by competent evidence.

¶ 16 The trial court found as follows in Finding of Fact 42:

 42. That in order for Plaintiff to work, the minor
 children Maya and Mason needed work-related childcare
 on days they are not in school. During 2018, the Plaintiff
 had to make an election to either work and pay childcare
 or not work. That she could only afford childcare which
 cost $150.00 per week. That Plaintiff feels that in the
 future she would need to pay childcare for eighteen weeks.
 That the Plaintiff’s cost of daycare would be $600.00 per
 month.

¶ 17 The finding above was based on Plaintiff’s testimony and her financial

 affidavit, which included the following breakdown of her average work-related

 childcare expenses for her younger two children for an estimated ninety days per

 year:

 90 days of childcare/five workdays per week=18 weeks,

 18 weeks x two children x $200 per week=$7,200

 $7,200/12 months=$600/month

¶ 18 Plaintiff testified as follows on direct examination:

 [PLAINTIFF’S COUNSEL]: So looking at [your financial
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 affidavit], have you tried to estimate the number of days
 you would need each month to provide that daycare or
 work-related childcare so you could work those days?

 [PLAINTIFF]: Yes.

 [PLAINTIFF’S COUNSEL]: Have you used a school
 calendar to try to determine the number of days that they
 are out of school, if it’s during the school year?

 [PLAINTIFF]: Yes. This is it. It includes teacher
 workday, holidays, summer breaks. Holidays . . . [,] [a]
 total of 90 days for the year for the school year, calendar
 year, that they are out of school.

 [PLAINTIFF’S COUNSEL]: And so, if we looked at that in
 terms of weeks, that would be about 18 weeks?

 [PLAINTIFF]: Correct.

 [PLAINTIFF’S COUNSEL]: And then did you multiply
 that times two children times $200 a week, and then
 prorate that per month to be about $600 per month?

 [PLAINTIFF]: Yes.

 [PLAINTIFF’S COUNSEL]: And is that the number that
 you used in your financial affidavit on page three, rather
 than the $200—or $150 that you state that you’re currently
 able to afford.

 [PLAINTIFF]: Yes.

 We hold that this testimony, along with Plaintiff’s financial affidavit, was competent

 evidence to support the trial court’s finding that the reasonable work-related

 childcare costs of the parties were $600 per month.

¶ 19 Defendant asserts that the finding of $600 per month is erroneous because it
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 is based on a $200 per week rate Plaintiff paid for childcare during the summer when

 the children were not in school and not on daily rates for childcare during the school

 year, and that determining prospective childcare costs based on a weekly rate rather

 than a daily rate will result in overpayment for childcare. Defendant points to

 testimony by Plaintiff that she paid for childcare by the day some of the time when

 she could not afford to pay for an entire week to support the idea that basing

 prospective childcare costs on a daily rather than weekly rate would result in lower

 costs overall. Plaintiff’s testimony does not support this idea, however. Plaintiff

 testified that she paid for childcare at a daily rate when she did not have the funds

 to pay for a weekly rate; her testimony does not suggest that the daily price she paid

 was less expensive on a weekly basis than paying for a full week: instead, she

 testified that she paid by the day when she could not afford to pay by the week.

 Accordingly, we reject the argument that determining the childcare costs based on a

 weekly rate rather than a daily rate was erroneous.

 2. Findings of Fact 39, 40, and 41

¶ 20 Defendant also challenges the trial court’s finding that the children’s

 extraordinary expenses were $953.41 per month. Rather than challenge the

 sufficiency of the evidence to support the costs included in the monthly average of

 these expenses, Defendant contends that some of the costs used to calculate the

 average should not have been included because they were for activities that had taken
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 place in the past and there was no evidence that these activities were ongoing. We

 hold that the trial court’s findings related to the children’s extraordinary expenses

 were supported by competent evidence and that the court did not abuse its discretion

 by calculating an average that included costs that there was no evidence would be

 recurring.

¶ 21 North Carolina General Statute § 50-13.4(c) provides that child support

 shall be in such amount as to meet the reasonable needs of
 the child for health, education, and maintenance, having
 due regard to the estates, earnings, conditions, accustomed
 standard of living of the child and the parties, the child care
 and homemaker contributions of each party, and other
 facts of the particular case.

 N.C. Gen. Stat. § 50-13.4(c) (2019). “The calculation of child support is governed by

 North Carolina Child Support Guidelines established by the Conference of Chief

 District Court Judges.” Craven Cnty. ex rel. Wooten v. Hageb, 2021-NCCOA-231 ¶ 12

 (2021) (citation omitted). “Child support set in accordance with the Guidelines is

 conclusively presumed to be in such amount as to meet the reasonable needs of the

 child and commensurate with the relative abilities of each parent to pay support.”

 Beamer v. Beamer, 169 N.C. App. 594, 596, 610 S.E.2d 220, 223-24 (2005) (internal

 marks and citation omitted).

¶ 22 Regarding “extraordinary expenses,” the Child Support Guidelines provide

 that
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 [o]ther extraordinary child-related expenses (including (1)
 expenses related to special or private elementary or
 secondary schools to meet a child’s particular education
 needs, and (2) expenses for transporting the child between
 the parent’s homes) may be added to the basic child support
 obligation and ordered paid by the parents in proportion to
 their respective incomes if the court determines the
 expenses are reasonable, necessary, and in the child’s best
 interest.

 N.C. Child Support Guidelines (2019). “Determination of what constitutes an

 extraordinary expense is within the discretion of the trial court[.]” Biggs v. Greer,

 136 N.C. App. 294, 298, 524 S.E.2d 577, 581 (2000) (internal marks and citation

 omitted). A court may adjust the basic child support obligation for extraordinary

 expenses, but such an adjustment is discretionary and does not qualify as a deviation

 from the Guidelines. Id., 524 S.E.2d at 581-82. Thus, “[e]ven though the guidelines

 note two specific extraordinary expenses, school and travel, . . . [this] list . . . is not

 exhaustive[.]” Balawejder v. Balawejder, 216 N.C. App. 301, 317, 721 S.E.2d 679, 688

 (2011) (internal marks and citation omitted).

¶ 23 The trial court found in relevant part as follows:

 39. That the Plaintiff’s and Defendant’s three minor
 children are involved in numerous extracurricular
 activities which require expenses. Kailey is involved in
 travel soccer, piano, and pageants. Maya is involved in
 gymnastics, school clubs, and theater camp. Mason is
 involved in basketball and theater camp.

 40. That the minor child Maya is struggling in school,
 and the Plaintiff hired a tutor to help Maya with her
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 studies.

 41. That the approximate average of costs for the minor
 children’s extracurricular activities and Maya’s tutoring is
 $953.41 per month.

¶ 24 Defendant specifically objects to inclusion of costs for driving school, theater

 camp, and pageants to calculate the average costs of the children’s extraordinary

 expenses. The trial court credited in full Plaintiff’s financial affidavit in arriving at

 the $953.41 per month figure, which included a $65 cost for driving school, a $704

 cost for pageants, and a $152.50 per-child cost for theater camp for two of the three

 children. While there was no evidence that the cost of the objected-to expenses would

 be recurring, neither was there evidence that these costs would not be recurring,

 setting aside the attorney argument in Defendant’s appellate brief. We therefore hold

 that including these costs was well within the trial court’s discretion in determining

 the children’s average extraordinary expenses going forward.

 3. Findings of Fact 51, 52, 53, 54, and 55

¶ 25 Defendant also challenges the trial court’s findings related to his child support

 arrears for the 2018-2020 timeframe—the period when this action was pending.

 Specifically, Defendant argues that the court neglected to account for evidence that

 some of the children’s extraordinary expenses had been paid by him directly during

 this two-year period and that some of the expenses did not exist during the entire

 period. We hold that the trial court was not required to give Defendant a credit for
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 his children’s expenses he paid after Plaintiff commenced this action but before the

 court entered the order on appeal, and that the court calculated his arrears correctly.

¶ 26 As noted previously, “[t]he North Carolina Child Support Guidelines allow the

 court to add to the parties’ basic child support obligation based on certain

 extraordinary expenses[.]” Balawejder, 216 N.C. App. at 316, 721 S.E.2d at 688.

 “[A]bsent a party’s request for deviation, the trial court is not required to set forth

 findings of fact related to the child’s needs and the noncustodial parent’s ability to

 pay extraordinary expenses.” Biggs, 136 N.C. App. at 298, 524 S.E.2d at 582. “Thus,

 the trial court has the discretion to determine what expenses constitute extraordinary

 expenses, the amount of these expenses, and . . . how the expenses are to be

 apportioned between the parties.” Mackins v. Mackins, 114 N.C. App. 538, 549, 442

 S.E.2d 352, 359 (1994).

¶ 27 The trial court was not required to make findings of fact regarding Defendant’s

 contribution to the children’s extraordinary expenses during the time the case was

 pending or provide Defendant with any credit or offset for these contributions in

 calculating his child support arrears. Instead, the court needed only to determine the

 parties’ adjusted gross incomes, and the cost of current work-related childcare, health

 insurance premiums, and extraordinary expenses. The trial court made these

 findings and used the results in the appropriate worksheet.

 C. Securing Child Support and Alimony Obligations with Life Insurance
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

¶ 28 The trial court found in relevant part as follows in support of its order that

 Defendant maintain a life insurance policy to secure his child support arrears and

 alimony obligation:

 44. That the Plaintiff is a dependent spouse who is
 actually substantially dependent upon the Defendant for
 her maintenance and support.

 45. That the Defendant is a supporting spouse upon
 whom the Plaintiff is actually substantially dependent for
 maintenance and support.

 ...

 54. That the Defendant’s total child support arrears as
 of June 30, 2020 is . . . $114,730.22.

 ...

 56. The Defendant shall pay all amounts owed for July
 1, 2020 ($4,105.35 in child support) on or before July 5,
 2020. Defendant’s child support arrearage for February 1,
 2020 through June 30, 2020 is being repaid from
 Defendant’s 401(k). Defendant’s alimony arrears for
 February 1, 2020 through July 31, 2020 shall be repaid on
 or before July 5, 2020 . . . . Effective August 1, 2020, the
 Defendant shall pay Plaintiff child support of $4,105.35
 and alimony of $1,900.00 each month on or by the first day
 of each month.

 57. That Defendant shall secure his child support
 arrears and alimony by maintaining life insurance on his
 life with a death benefit of $550,000.00, naming Plaintiff
 as beneficiary.

¶ 29 Defendant argues that no North Carolina statute authorizes a trial court to

 order a supporting spouse to maintain a life insurance policy to secure a child support
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 or alimony obligation. Plaintiff argues that N.C. Gen. Stat. § 50-16.7(b) authorizes

 such an order. Section 50-16.7(b) provides in relevant part that a court ordering the

 payment of alimony may “require the supporting spouse to secure the payment of

 alimony . . . by means of a bond, mortgage, or deed of trust, or any other means

 ordinarily used to secure an obligation to pay money or transfer property[.]” N.C.

 Gen. Stat. § 50-16.7(b) (2019). We hold that the life insurance the trial court ordered

 Defendant to maintain did not qualify as “security” within the meaning of § 50-

 16.7(b), and therefore do not reach the issue of whether life insurance can qualify as

 a “means ordinarily used to secure an obligation to pay money” under § 50-16.7(b).

¶ 30 An award of alimony is only authorized “upon a finding that one spouse is a

 dependent spouse, that the other spouse is a supporting spouse, and that an award

 of alimony is equitable after considering all relevant factors[.]” N.C. Gen. Stat. § 50-

 16.3A(a) (2019). N.C. Gen. Stat. § 50-16.1A(2) defines a “dependent spouse” as “a

 spouse, whether husband or wife, who is actually substantially dependent upon the

 other spouse for his or her maintenance and support or is substantially in need of

 maintenance and support from the other spouse.” Id. § 50-16.1A(2). Subsection (5)

 of § 50-16.1A goes on to define “supporting spouse” as “a spouse, whether husband or

 wife, upon whom the other spouse is actually substantially dependent for

 maintenance and support or from whom such spouse is substantially in need of

 maintenance and support.” Id. § 50-16.1A(5).
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

¶ 31 However, “[i]f a dependent spouse who is receiving postseparation support or

 alimony from a supporting spouse under a judgment or order of a court of this State

 remarries or engages in cohabitation, the postseparation support or alimony shall

 terminate.” Id. § 50-16.9(b). Likewise, “[p]ostseparation support or alimony shall

 terminate upon the death of either the supporting or the dependent spouse.” Id. The

 reason is that “[t]he purpose of alimony is to provide support and maintenance for

 the dependent spouse.” Potts v. Tutterow, 114 N.C. App. 360, 363, 442 S.E.2d 90, 92

 (1994) (citation omitted). Accordingly, alimony has been described as the proportion

 of the supporting spouse’s estate “which is judicially allowed and allotted to a

 [dependent spouse] for [his or] her subsistence and livelihood during the period of

 (their) separation.” Rogers v. Vines, 6 Ired. 293, 297 (1846). Just as alimony

 terminates on the death of either party, so too do other legal obligations to make

 support payments to a dependent spouse, Bland v. Bland, 21 N.C. App. 192, 196, 203

 S.E.2d 639, 642 (1974), unless they are part of “a complete settlement of all property

 and marital rights between the parties” for which there is reciprocal consideration,

 such that “the entire agreement would be destroyed by a modification of the support

 provision[,]” Walters v. Walters, 54 N.C. App. 545, 548, 284 S.E.2d 151, 153 (1981)

 (internal marks and citation omitted), rev’d on other grounds, 307 N.C. 381, 298

 S.E.2d 338 (1983).

¶ 32 The requirement in the trial court’s order that Defendant “secure his child
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 support arrears and alimony by maintaining life insurance on his life with a death

 benefit of $550,000.00,” was, in effect, a second award of alimony rather than security

 for his alimony obligation of $1,900 per month and unsatisfied child support arrears.

 “Security” has been defined as “[c]ollateral given or pledged to guarantee the

 fulfillment of an obligation; esp., the assurance that a creditor will be repaid (usu.

 with interest) any money or credit extended to a debtor.” Security, Black’s Law

 Dictionary (11th ed. 2019). The obligations purportedly secured by the requirement

 in the trial court’s order that Defendant maintain life insurance with a death benefit

 of $550,000 were the net, unsatisfied child support arrears that accrued between 1

 February 2020 and 30 June 2020 of $18,026.75 and a total potential alimony

 obligation of $456,000 in nominal terms (i.e., without any adjustment for inflation or

 other discounts), assuming (1) Defendant survived the entire twenty years he was

 ordered to pay $1,900 per month in alimony; (2) the parties never reconciled; and (3)

 Plaintiff never remarried. That is, setting aside the validity of this purported

 security, if the requirement that Defendant maintain life insurance with a death

 benefit of $550,000 was, in fact, security for his unsatisfied, net child support arrears

 and his total potential alimony exposure, the life insurance overcollateralized the

 obligations secured, which equaled at most $474,026.75. The obligations purportedly

 secured equaled $75,973.25 less than the $550,000 of “security.”

¶ 33 More fundamentally though, the requirement in the trial court’s order that
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 Defendant maintain life insurance with a death benefit of $550,000 was, in effect, a

 second award of alimony, which the overcollateralization of the purported security

 underscores. The death benefit of $550,000 did not guarantee the fulfillment of the

 obligations to pay $18,026.75 in net, unsatisfied child support arrears and the

 obligation to pay as much as $456,000 in alimony. Were Defendant to pay his net,

 unsatisfied child support arrears on or before 5 July 2020 and the $1,900 per month,

 as ordered, but pass away on 31 July 2040, the day before his final $1,900 monthly

 alimony payment was due, assuming the parties never reconciled and Plaintiff never

 remarried, Plaintiff would receive a windfall: $18,026.75 in child support arrears;

 $454,100 in monthly alimony payments; and $550,000 of “security” in the form of a

 death benefit from the life insurance policy—representing more than a double

 recovery of the amounts purportedly “secured” by the life insurance. Accordingly, we

 hold that the life insurance the trial court ordered Defendant to maintain did not

 qualify as “security” within the meaning of § 50-16.7(b).

¶ 34 Finally, as we reasoned in Squires v. Squires, 178 N.C. App. 251, 264, 631

 S.E.2d 156, 164 (2006), the requirement in the trial court’s order that Defendant

 maintain life insurance with a death benefit of $550,000 is “without effect as such a

 term is barred by statute.” To reiterate, “alimony shall terminate upon the death of

 either the supporting or the dependent spouse.” N.C. Gen. Stat. § 50-16.9(b) (2019).

 The death benefit of the life insurance Defendant was ordered to maintain would
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 constitute alimony Plaintiff received after Defendant’s death—upon the occurrence

 of which any obligation of Defendant to pay Plaintiff alimony would have been

 extinguished. See id. Section 50-16.7(b) does not create an exception from the rule

 that an alimony obligation terminates upon the death of either the supporting or

 dependent spouse. We therefore vacate the portion of the trial court’s order requiring

 Defendant to maintain life insurance with a death benefit of $550,000 naming

 Plaintiff as beneficiary.

 D. Attorney’s Fees

¶ 35 Defendant challenges the trial court’s award of attorney’s fees on the basis that

 the award includes fees incurred during the equitable distribution portion of the case,

 which are not recoverable. Plaintiff suggests that this is a clerical error in the order,

 but we disagree. We hold that (1) competent evidence in the record supported the

 trial court’s findings that Plaintiff was a dependent spouse; (2) Defendant was a

 supporting spouse; and (3) Plaintiff had insufficient means to subsist during the

 prosecution of the case and defray necessary expenses. However, the attorney’s fee

 award included fees incurred during the equitable distribution portion of the case,

 which was improper. We vacate the portion of the order awarding Plaintiff attorney’s

 fees and remand the case for entry of an award of attorney’s fees that does not include

 fees for equitable distribution.

¶ 36 “A party can recover attorney’s fees only if such a recovery is expressly
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 authorized by statute.” Robinson v. Robinson, 210 N.C. App. 319, 336, 707 S.E.2d

 785, 797 (2011) (internal marks and citation omitted). N.C. Gen. Stat. § 50-13.6

 authorizes attorney’s fee awards in actions for child custody, while N.C. Gen. Stat.

 § 50-16.4 authorizes them in actions for alimony. See N.C. Gen. Stat. § 50-13.6 (2019)

 (“[T]he court may in its discretion order payment of reasonable attorney’s fees to an

 interested party acting in good faith who has insufficient means to defray the expense

 of the suit.”); id. § 50-16.4 (“[T]he court may . . . enter an order for reasonable counsel

 fees, to be paid and secured by the supporting spouse in the same manner as

 alimony.”). In actions for equitable distribution, however, attorney’s fees are not

 recoverable. Robinson, 210 N.C. App. at 337, 707 S.E.2d at 797 (citations omitted).

 In a combined action for equitable distribution, alimony, and child support, a trial

 court may award attorney’s fees for the alimony and child support portions of the

 case, but not for the equitable distribution portion. Id.

¶ 37 Plaintiff’s counsel averred in a 14 January 2020 affidavit prepared in support

 of the award of attorney’s fees that total fees and costs for Plaintiff’s claims for

 alimony, child custody, and child support were $11,321.86. A 14 January 2020 billing

 statement attached to the affidavit reflects a balance of $11,489.11, however, and the

 trial court awarded attorney’s fees to Plaintiff in the amount reflected in the billing

 statement rather than the affidavit. A review of the billing statement reveals that

 the billing statement includes fees for the equitable distribution portion of the case.
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

 There is a handwritten notation on the billing statement that states that “since

 6/26/2019 (date of prior affidavit), an additional $6,515.61 has been incurred[.]” The

 affidavit likewise references a prior affidavit submitted by Plaintiff’s counsel in

 support of the award, stating that through 26 June 2019, the recoverable fees were

 $4,806.25. However, this prior affidavit is not in the record on appeal. The

 exhibits/evidence log prepared by the clerk references a Plaintiff’s Exhibit 27

 described as “expenses for atty’s fees” admitted by the court on 28 June 2019,

 suggesting that the prior affidavit not in the record may be Plaintiff’s Exhibit 27.

¶ 38 Under Rule 9 of the North Carolina Rules of Appellate Procedure, our review

 “is solely upon the record on appeal,” N.C. R. App. P. 9(a), and we cannot consider

 trial exhibits not included in the record on appeal, Ronald G. Hinson Elec., Inc. v.

 Union Cnty. Bd. of Educ., 125 N.C. App. 373, 375, 481 S.E.2d 326, 328 (1997). We

 hold that the trial court erroneously relied only on the 14 January 2020 billing

 statement—which, as both the handwritten notation on the billing statement and

 affidavit indicate, included recoverable fees of only $6,515.61, not the total

 recoverable fees of $11,321.86. Accordingly, we vacate the attorney’s fee award and

 remand the case for entry of an attorney’s fees award that does not include fees for

 equitable distribution.

 III. Conclusion

¶ 39 We affirm the order of the trial court in part but vacate the portions of the
 WADSWORTH V. WADSWORTH

 2021-NCCOA-703

 Opinion of the Court

order requiring Defendant to maintain life insurance and awarding Plaintiff

attorney’s fees. We remand the case to the trial court for entry of an award of

attorney’s fees that does not include fees for equitable distribution. Because N.C.

Gen. Stat. §§ 50-13.6 and 50-16.4 only authorize awards of reasonable fees, the award

entered by the trial court on remand must be supported by factual findings

demonstrating that the fees are reasonable. See, e.g., Falls v. Falls, 52 N.C. App. 203,

221, 278 S.E.2d 546, 558 (1981) (“To support an award of attorney’s fees, the trial

court should make findings as to the lawyer’s skill, his hourly rate, its reasonableness

in comparison with that of other lawyers, what he did, and the hours he spent.”).

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

 Judges DILLON and MURHPY concur.